JOHN TAYLOR and ROBERT K. HAMILL, Plaintiffs in Error.

*vs.*

PHILARMAN PRATT, Defendant in Error.

ERROR TO THE SAUK CIRCUIT COURT.

To take a case out of the statute of frauds, not only the *promise* to answer for the debt, default or miscarriage of another, but the *consideration* for such promise must be expressed in writing.

When there is a liability by one party to another, and a third party guarantees or becomes surety for the party bound, the agreement, promise or contract of such third party, must not only be in writing, but the writing must express the consideration for the promise or contract.

This was an action of asssumpsit, commenced in the Circuit Court of Sauk county, on the guarantee of a promissory note, of which the following is a copy:

"For value received on or before the first day of November, one thousand eight hundred and fifty-two, I promise to pay Philarman Pratt or bearer, eleven hundred dollars; and if not paid on or before the first day of June, one thousand eight hundred and fifty-two, the said sum is to bear twelve per cent. interest from that time until paid.

Baraboo, June 5, 1851.         *Samuel*
                        (Signed)     R. HAMILL."

On the back of said note was the following:

We hereby guarantee the payment of the within note.          (Signed)     ROBERT R. HAMILL,
June 5th, 1854.          JOHN TAYLOR.

The declaration contained several counts, charging Robert R. Hamill and John Taylor as makers, en-

dorsers, and guarantors, to which the defendants pleaded the general issue. Upon the trial, the plaintiff offered in evidence the said promissory note and guarantee on the back of the same, and offered to prove the consideration for which the note was signed, and also that the guaranty was given at the same time with the making of the note, and that the principal credit was given to the guarantors; which evidence was objected to by the defendant, as was also the guarantee on the ground that there was no consideration expressed therein. The court overruled the objection and the evidence was admitted.

Further testimony was produced showing that the firm of Willard, Hawkins & Willard gave a chattel note to the defendant in error, Pratt, for $2000 payable in logs; that the said R. R. Hamill purchased from Pratt the said chattel note, for which he gave in payment thereof one note of $1000, payable in twelve months, and another note of $1100, payable in eighteen months, and that said two notes were guaranteed by John Taylor and Robert R. Hamill.

This last mentioned note it appears is the one upon which this suit was brought.

It further appeared from the testimony of a witness on the part of the plaintiff, that Taylor told the witness the day before the guaranty that he was going to sign the note, and also told him the day after that he had become security for S. R. Hamill on a note, and witness had heard R. R. Hamill say that he and Taylor had gone security for Samuel on the note; witness had heard Taylor remark that Samuel was a fine fellow, and he was going to back him; witness testified also that S. R. Hamill was not a man of pecuniary responsibility.

The cause was submitted to the Judge, who gave judgment for the defendant in error for the amount of the note and costs ; to reverse which this writ of error is brought.

In view of the importance of this case, establishing, as it does, a rule of law which enters so frequently into the every day transactions of business men ; and as the briefs of counsel so fully collate the authorities bearing upon the subject, it is deemed proper to depart from the general plan of this volume, and to give so much of the arguments and authorities cited as may be considered of interest to the profession and the public.

*E. G. Ryan,* for the plaintiff in error.

The question in this case is whether the guaranty, which was the subject of the action, be within the statutes of fraud and void, because it does not express the consideration. There is, no doubt, much contrariety of decision on the question. The counsel for the defendant in error seems to assume that the weight of authority and of reason are with him, and sneers at a late case, because it gives neither reason nor authority for enforcing the statute. The reason is in the plain letter and spirit of the statute, too plain to need any office of construction ; and the wonder is how, with all their zeal to override the statute, any court was bold enough to begin the work of constructively defeating so plain a provision.

The statute provides that " every special promise to answer for the debt, default or miscarriage of another person," " shall be void, unless such agreement or some note or memorandum thereof, expressing the

consideration, be in writing, and subscribed by the party charged therewith."—*R. S.* 388.

This statute avoids all promises for the debt of another, unless three several requisites combine; first, it must be in writing; second, it must express the consideration; and third, it must be subscribed by the party charged. If the power of judicial repeal of statutes can dispense with any one of these three requisites, there is no reason why it is not competent to dispense with all of them; and to enforce, against the policy of the statute and its letter, every verbal promise to pay the debt of another.

The guaranty in the case at bar, not expressing the consideration, is void, if it be within the statute, " a promise to answer for the debt or default of another."

The word " guaranty" does not depend upon its derivation or its popular use for its meaning. It has been the subject of repeated judicial interpretation : and has as defined a legal meaning as any word. It is, both in its commercial and its legal signification, "an engagement to be responsible for the debt or duty of a third person, in the event of his failure to fulfill his engagement; an undertaking to pay the debt of another, in case he does not pay it."

*Fell on Guaranties,* 1. *Story on Contracts,* § 852 *Story on Promissory Notes,* § 457. 3 *Kent's Com.* 121. *McLaren vs. Watson,* 26 *Wend.* 426, 436. *Dale vs. Young,* 24 *Pick.,* 250, 252.

These definitions of the legal import of the word guaranty, are entirely synonymous with the promise to answer for the debt or default of another, of the statute. And if some judges had not gone wild in their efforts to defeat the policy of the statute, the

proposition that such a guaranty is within the statute would have seemed self-evident.

The English statute was that no one should be charged "upon any special promise to answer for the debt, &c., of another, unless the agreement upon which the action shall be brought, shall be in writing, signed by the party to be charged therewith."

Upon this statute, which did not in terms require the consideration to be expressed, the question was raised whether by the import of the other terms, it was not necessary that the promise should express the consideration. And in the leading case of *Wain vs. Walters*, it was unanimously held that the word 'agreement' imported the expression in writing of the consideration as well as of the promise. This decision has been acquiesced in to this day by the English courts.

*Wain vs Walters*, 5 *East.* 10, made in 1804. *Egerton vs. Mathews*, 6 *East.* 307, in 1805. *Stadt vs. Lill*, 9 *East.* 348, in 1808. *Saunders vs. Wakefield*, 4 *Barn. & Ald.* 595, in 1807. *Jenkins vs Reynolds*, 3 *Brod. and Bing.* 14, 328, in 1821. Whatever was necessary to be proved by parol before the statute, must now appear in writing.

*Morley vs. Boothby*, 3 *Bing.* 107, in 1825. *Newbury vs. Armstrong*, 6 *Bing.* 201, in 1829. *Allnut vs. Ashenden*, 5 *Mann & Grang.* 392, in 1843.

The defendant in error relies upon a class of cases, to be found chiefly in the Massachusetts Reports, where a party who, not the maker or payee of a note, but intending to become a surety upon it, subscribes or endorses the note in blank, is held to be a joint maker of the note. But that doctrine, said to be peculiar to New England, (*Chaffee vs. Jones*, 19 *Pick.*,

263,) even if considered binding authority on this court, does not reach the present question. Those cases go upon the legal effect of a party's signing his name in blank to a promissory note, by which he is held to become a party to the note: and they have no application to a case where the party himself defines his contract and leaves the court no room to make a contract for him.

A party, having no interest in the contract, may become an original party to it, bound as an orginal promisor, whether the contract be written or verbal, and not be within the statute of frauds. So a party, having no interest in the consideration of a promissory note, may become a party to it, as an original promisor, by words of that signification, or by a blank signature of the note. There the contract is the note itself, and not a collateral or separate contract. But a guaranty, though a collateral contract, is a distinct and separate contract. It does not make the signer a party to the note, but binds him by a separate "special promise for the debt of another." And it has been expressly held in the State where those decisions arose, that where a party defines his contract by the word "guaranty," he cannot be held a surety or original promisor. *Oxford Bank vs. Haynes*, 8 *Pick*. 534. *Talbot vs. Gray*, 18 *Pick*. 534.

It is true that the Supreme Court of Massachusetts, passing upon a statute corresponding with the English, held the decision in *Wain vs. Walters* to be unsound, and that under their statute the consideration need not be expressed. *Packard vs. Richardson*, 17 *Mass*. 122.

The reasoning of the court in that case is against the policy of requiring the consideration to be express-

ed and the import given to the word agreement by the Court of King's Bench ; but the argument of the court upon the construction of a statute, not in terms, requiring the consideration to be expressed, seems to concede that if the statute had expressly required it, they would have given force to the terms of the statute. And even upon their statute, so much doubt existed of the correctness of that ruling, from the weight of *Wain vs. Waters* and the case following it, that the very able revisors of the laws of that State, considered it expedient as late as 1834, for the purpose, as they say in their notes, " of adopting and confirming the judgment of the supreme judicial court upon the construction of the statute now in force, 17 *Mass. R.* 122," pronounced in 1821, not on ly to continue the omission of the express words of our statute, but to insert a section expressly declaring that " the consideration of any such promise, &c., need not be set forth or expressed in the writing, to be signed by the party to be charged therewith ; but may be proved by any other legal evidence." Chap. 74, § 2.

The position of the courts of Massachusetts on this question is therefore this : With a statute similar to that of England, they dissent from the rule in *Wain vs. Walters,* and hold that the word " agreement" does not import the expression of the consideration. And they interpose no difficulty in giving full effect to the language of the statute, requiring in express terms the consideration to be expressed in the contract.

In New York the statute was originally a copy of the English statute. The construction of the statute came before the court at an early day, and the

court followed the rule in *Wain vs. Walters.*   *Sears*
*vs. Brink,* 3 *Johns.* 210.

This decision was in 1808.  The question came
again before the court in 1811, and Chief Justice
Kent, with that proneness to interpret the law rath-
er by his own sense of right, than by its letter, spir-
it or policy, which made him a much abler equity
judge than safe common lawyer, drew an ingenious
but inconsistent distinction to take a large class of ca-
ses out of the Statute.  It was held in that case that,
where the guaranty was made at the same time with
the principal contract, and was a ground of the cred-
it to the principal debtor, although the guaranty did
not express a consideration, these facts might be prov-
ed by parol, and the words value received in the note
were held a sufficient expression of consideration, to
charge the guarantor.  *Leonard vs. Vredenburgh,* 8
*Johns.* 29.

It will readily be perceived that this decision is
inconsistent with that in *Sears vs. Brink;* and accord-
ingly we find the Chief Justice saying "but upon
better reflection, I now think that the plaintiff ought
to have recovered upon that contract."  And yet we
find the court again in 1816, as in many subsequent
cases, affirming and following *Sears vs. Brink.*   *Kerr
vs. Shaw,* 13 *Johns.* 236.

These decisions conflicting in principle, both sus-
tained in subsequent cases, are followed, as every de-
parture from correct principle is followed, by a long
train of vascillating and inconsistent decisions.  To
sustain themselves in the conflict of principle in their
own decisions, the courts of New York were driven
to the absurdity of dividing the same identical con-
tract into distinct classes of contracts, interpreting

and controlling the contract in each case by the circumstances under which it is made, as proved by parol, instead of by the written contract itself; permitting, under certain circumstances, the contract of the parties to stand and be controlled by its own terms and under other circumstances, making an essentially different contract for the parties.

They divide collateral contracts to pay the debt of another, although written in the same identical words, into three classes.

1st. Where the promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal creditor.

2nd. Where the collateral undertaking is subsequent to the creation of the debt, and was not the inducement to it, though the subsisting liability is the ground of the promise without any distinct inducement.

3d. Where the promise arises out of some new and original consideration of benefit or harm moving between the newly contracting parties.

They hold the first class to be within the statute, requiring the promise to be in writing, signed by the party, but not expressing the consideration.

They hold the second class to be within the statute, requiring the promise to be in writing, signed by the party and expressing the consideration.

They hold the third class not to be within the statute at all.

They thus arrive at the admirable consistency of applying the whole statute to the same contract in some circumstances; half of the statute to the same contract in different circumstances; and none of the

statute to the same contract in still other circumstan-ces.

June Term 1854.

Taylor et al vs. Pratt.

As will be seen hereafter, this is one of the subtle departures from sound principle, like that on the rule of compensation for private property taken for public use and many others, bequeathed by Judge Kent to distract and puzzle his judicial posterity; and from which, after floundering through absurdity for nearly half a century, the state has at last redeemed itself by returning to the rule adopted in *Sears vs. Brink* from *Wain and Walters.*

See *Skelton vs. Brewster*, 8 *Johns.* 376; *Harrison vs. Sawtel*, 10 *Johns.* 242; *Gold vs. Phillips*, 10 *Johns.* 412; *Bailey vs. Freeman*, 11 *Johns.* 221; *Wilson vs. Dubois*, 13 *Johns.* 175; *Myers vs. Morse*, 15 *Johns.* 425; *Chase vs. Day*, 17 *Johns.* 114; *Olmstead vs. Greenby*, 18 *Johns* 12; *Farley vs. Cleveland*, 4 *Cowen* 432; *S. C.*, 9 *Cowen*, 639; *Gather vs. Brunell*, 6 *Cowen*, 346; *Chapin vs. Merril*, 4 *Wend.* 657; *Gardner vs. Hopkins*, 5 *Wend.* 23; *Elwood vs. Monk*, 5 *Wend.* 235; *King vs. Despard*, 5 *Wend.* 277; and cases cited on the defendant in error's brief.

The first step backwards towards correct principle appears to have arisen on the doctrine copied from Massachusetts, that a blank endorsement of a person, not the payee, made at the same time as the note, might be used to charge the party either as a joint maker of the note, or as a guarantor. That doctrine is finally abandoned in several later cases, not without fatal inroad upon the principles of *Leonard vs. Vredenburgh.* *Seabury vs Hungerford*, 2 *Hill*, 84; *Hall vs. Newcombe*, 3 *Hill*, 233; 7 *Hill*, 416; *Gilmore vs. Spies*, 1 *Barb. S. C.* 159; 1 *Comst.* 321.

In the last case, in the Court of Appeals, Mr. Jus-

tice Bronson uses the following sane language, memorable in a New York judge, after so long a course of erratic decision: "There are few cases in the books which hold, in effect, that a written contract of one kind may be turned into a contract of a different kind, by parol proof concerning the intention of the parties; that the endorser of a promissory note may, under certain circumstances, be charged as maker or guarantor; and that the guarantor of a promissory note may sometimes be charged as maker or endorser· Although these cases stand upon no principle, it has been a work of some time and difficulty to get rid of them. The Court of Errors was at first equally divided on the question; but after a second argument, the court decided by a pretty strong vote, to uphold contracts as they had been made by the parties, instead of making new contracts for them. *Hall vs. Newcombe.*"

The same doctrine is reiterated by the Court of Appeals in a later case, in which the payee of a note, in transferring it to his creditor, signs a guaranty on the back of the note. In this case the court holds the guaranty to be within Kent's third class of collateral promises, and not within the statute, because it is in substance a promise to pay the debt of the guarantor in a particular way, and would be good without writing.

In this last case Judge Bronson again holds the language of returning reason. It is said on the one side that the defendant is the maker of a promissory note, and liable as such; and on the other side that he is an endorser and has been discharged for the want of demand and notice· And strange as it may seem, there are cases in the books which go to uphold both

of these positions. But they are both wrong. The
defendant is neither maker nor endorser of a promis-
sory note. On the contrary he has in very plain terms
made a contract of a very different kind from either
of those, one well known to the law ; and by that
contract he must either stand or fall. He has guar-
anteed the payment of the note; and we have no
right to turn that contract into one of a different
kind. This is so plain a principle that it would seem
to be enough to mention it, without saying anything
more. And yet there are cases which hold that the
guarantor of a promissory note may sometimes be
treated as a maker, and sometimes as endorser.
This has usually been allowed for the purpose of giv-
ing effect to the supposed intention of the parties, as
ascertained from extrinsic evidence, though there has
not always been so fair an apology for altering the
contract. * * * But the side of truth and prin-
ciple will sooner or later prevail, and the decisions
of the Court of Errors in *Hall vs. Newcomb*, and of
this Court in *Spies vs. Gilmore*, have greatly shaken,
if they have not entirely overthrown, the cases in
which the courts have taken the liberty to remodel
the contract of the parties. Those cases have never
had any ground of principle to stand on, and I trust
they will never again be cited as authority in this
State." And he then goes on to show that the guar-
anty in that case was a promise to pay the debt of
the guarantor himself and therefore not within the
statute of frauds ; and says expressly that if the case
was within the statute, it would be impossible to over-
come the objection that no consideration is expressed
in the guaranty. *Brown vs. Curtis*, 2 *Comst.* 225.

As has been already said, *Leonard vs. Vredenburgh*

was decided under a statute copied from the English; subsequently a statute was adopted identical with ours, but the courts still continued the construction of *Leonard vs. Vredenburgh.* But in *Brown vs. Curtis* the court admits the binding efficacy of the words " expressing the consideration,'" and in subsequent cases in the Supreme Court, the whole doctrine of *Leonard vs. Vredenburgh* is reviewed, disaffirmed and held not to be authority applicable to the construction of the new statute. *Brewster vs. Silence,* 11 *Barb. S. C.* 144 ; *Spicer vs. Norton,* 13 *Barb. S. C.* 542.

The case of *De Wolf vs. Rabaud* cited on the other side, is no more than a New York case of that date, as the Supreme Court of the United States expressly reserve their own views of the statute and decide the cases as a local question, on which they are bound by the then decisions of the courts of New York upon the statutes of that State. 1 *Peters,* 501, 502.

Thus New York has gone far, if not the entire length, of freeing this question from the embarrassments of her decisions, by a return to sounder doctrines. *Durham vs. Manrow* is little more than an affirmance of *Brown vs. Curtis* ; and so far as it is a step backwards towards the former rule of decision, the authority of the case is greatly impaired by the superior reason of the dissenting opinions.

The policy of the statute was to prevent frauds, impositions and perjuries. And as the rule of admitting parol evidence to aid the defects of the contract, opens the door anew to fraud, imposition and perjury, it is not only in violation of the general rule excluding parol evidence to explain a written contract, but is also in direct opposition to the policy of the

statute, and operates as a repeal of one of its essential

provisions.

And it is not a little singular that the New York classification omits wholly to notice a class of cases, where a written obligation is given • to secure an antecedent debt, with a [cotemporaneous guaranty endorsed on it.. The classification of Judge Kent would place this in the second class, while his reasoning would place it in the first class.

Whatever the court may think of the policy of the statute, its duty here is to give a correct construction to the statute, and not to substitute a different policy by judicial legislation. Whatever force or argument is to be found in the authorities against our construction of the statute, will, on critical examination, be found to bear, not upon the construction, but upon the policy of the statute. The reason is an obvious one; the statute is so plain and specific as not to be the subject of construction beyond its letter.

That this guaranty, by the import of the term, is a collateral and not an original undertaking, is settled not only by the authorities already cited, but by this court, in a case which, without deciding the direct points in the case at bar, bear strongly with us. *Emerick vs. Saunders*, 1 *Wis.* 100.

And the admission of parol evidence to show that it is an original promise, and not a guaranty, or special promise to answer for the debt of another, is in violation of rules of evidence settled before the passage of the English statute, and never since disturbed, except to enable some courts to defeat what they considered impolitic provisions of the statute of frauds.

On the whole, it is submitted that the question comes before this court, not only unembarrassed by

June Term
1854.

Taylor et al
vs.
Pratt.
weight of authority against giving full effect to the language of the statute, but with the preponderance of authority in favor of giving it such effect. In this State, this is a case of first impression; and the court is invoked not to enter upon the office of judicial repeal, not to betray the future administration of law in this State, into the confusion and uncertainty from which New York has yet hardly escaped after half a century of doubt, by overriding the plain letter of the statute, and deciding, not what the statute is, but what it ought to be.

*Collins, Smith & Keyes,* for the defendant in error.

If a person, not the payee of a promissory note, but intending to become surety therefor, should at the time when it is made, write at the bottom thereof below the signature of the maker, or on the back thereof—" I acknowledge myself holden as surety for the payment of the above note," &c.; it has been holden upon such a promissory note, that the maker and the surety are to be deemed both original promisors, and the note a joint and several promissory note to the payee, although as between the maker and the other party, they should stand in the relation of principal and surety. *Story on Promissory Notes, page* 61, *s.* 58; *Hunt vs. Adams,* 5 *Mass. Rep.* 358, *S. C.;* 6 *Mass.* 519; 7 *ib.* 51; *Josselyn vs. Ames,* 3 *ib.* 274; *Parker vs. Briggs,* 8 *Pick. Rep.* 122; *Chaffer vs. Jones,* 19 *Pick. Rep.* 560; *Austin vs. Boyd,* 22 *ib.* 64; *Morris vs. Bird,* 11 *Mass. Rep.* 436; *Dean vs. Hall,* 17 *Wend. Rep.* 214; where this subject is considered *pro* and *con.*

It has been held that when a person at the time of the making of a negotiable note, write on the back

of it—"For value received I guaranty the payment of the within note;" or simply—"I guaranty the payment of the within note;" he was to be treated as a joint and several promissor with the maker thereof and not as guarantor. *Story on Promissory Notes*, *page* 61; *Luqueur vs. Prosser*, 1 *Hill, N. Y. Rep.* 256, *S. C.* 4 *Hill* 420; *Park vs. Brinkerhoof*, 2 *Hill*, 663; *Monrow vs. Durham*, 3 *Hill*, 584; *Oakley vs. Bowman*, 21 *Wend.* 588, 36 *Wend.* 230; *Hugh vs. Gray* 19 *Wend.* 292; *Douglas vs. Howland*, 24 *Wend.* 35; *Brown vs. Curtiss*, 2 *Comstock Rep.* 225, *S. P.* 553, 533; *Miller vs. Gaston*, 2 *Hill*, 188; 26 *Wend.* 430.

When a guaranty or promise, though collateral to the principal contract, is made at the same time with the principal contract, and is a ground of credit given to the principal debtor, the whole is one entire transaction, and the consideration extends and sustains the promise of the principal debtor, and also of the guarantor; no other consideration need be shown than that for the original agreement upon which the whole debt rested, and that may be shown by parol proof, as not being within the statute of frauds. 3 *Kent*, 122 *to* 123; *Leonard vs. Vredenburgh*, 8 *Johns Rep.* 29; *Bayly and Bogert vs. Freeman*, 11, *ib.* 221; *Nelson vs. Dubois*, 13, *ib.* 175; *De Wolf vs. Rabaud*, *et al* 1 *Peters, U. S. Rep.* 476 *to* 502. Here the doctrine is said to be founded in good sense and conscience.

The effect of an endorsement by a third person, not the payee of a negotiable note appears also to depend upon the intention of the parties to be ascertained by parol evidence, *and according to the time when the endorsement* is made, and the acts and declarations of the parties, and other circumstances, it will be con-

45

strued either as an original promise or an endorse-
ment or a guaranty of the maker's solvency. *Dean
vs. Hall*, 17 *Wend.* 214 ; 21 *ib.* 588, before cited
*Seabury vs. Hungerford*, 2d *Hill. Rep.* 80 ; *Hall vs.
Newconbe*, 3d *Hill*, 233 ; *S. C. in error*, 7 *Hill*, 416 ;
1 *Smith's leading cases, page* 181, and cases there re-
ferred to.

When you refuse to give credit to A. for goods till
he gives you a promissory note, stating for value re-
ceived, and write under the note, "I guaranty the
above," and sign my name to it, upon which you let
A. have the goods, although this is a collateral un-
dertaking, &c., yet my written guaranty shall bind
me, for though it be true that no consideration is di-
rectly expressed by me for my undertaking, yet it
shall be referred to the value received mentioned in
the note of A., and being all one transaction there is
thus a sufficient consideration to be gathered from the
face of the instrument to sustain my engagement
within the meaning of the statute of frauds. Such a
paper imports *one original entire* transaction, for a
guarantee of a contract implies from the force of the
term that it is a concurrent act, and part of the orig-
inal agreement. 8 *John Rep.* 40.

Hence the plaintiff may declare, if he chooses, on
the contract itself, without troubling himself about
the original consideration, and recover, as in ordina-
ry cases, by a simple proof of the instrument. 1 *Cow-
en's Treatise, p.* 317.

If a promise to pay the debt of another be found-
ed on a new and distinct consideration, independent
of the debt, and one moving between the parties to
the new promise, it is not a case within the statute of
frauds ; it is considered in the light of an original

promise, *Williams vs. Lepper*, 3*d Burr Rep.* 1886 ;
and the point is too clearly settled to be questioned.
8 *John. Rep.* 39 ; *Roberts on Frauds,* 232 *to* 237.
See our Statute of Frauds, *Revised Statutes, Chap.* 76,
*page* 388, *section* 2, *part* 2. Notice the difference be-.
tween our Statute of Frauds and those of England,
New York and Massachusetts.

Our Statute of Frauds is what the great leading case
of *Wayne vs. Walters,* 5 *East. p.* 10, decides the Eng-
lish Statute of Frauds to be in effect.

Story, Kent, and all of the elementary writers up-
on this subject, declare such a case as this without
the Statute of Frauds. The numerous decisions of
various courts of this country which we have cited
above, hold to the same opinion, and they give many
and good reasons for the opinion. And it would seem
that there could be no question about the law upon
this subject, yet learned Judges have not unfrequent-
ly questioned the correctness of the rule here con-
tended for. And in a late case in the Supreme Court
of New York, Judge Johnson had the boldness, in an
opinion about a finger's length, to overrule all of the
foregoing authorities, and decide a case very similar
to this adverse to the defendant in error in this cause;
but the learned Judge did not have the politeness or
condescension to offer a reason, or cite an authority
for this overruling decision. And though we may
not approve of this decision, we cannot but admire
the discretion of the Judge in declining to give rea-
sons or to cite authority for overruling such a formi-
dable array of authorities, both in his own State and
every other State in the Union.

*By the Court,* CRAWFORD, J. The second section

of chapter 76, of the Revised Statutes, provides that "every special promise to answer for the debt, default, or miscarriage of another person" shall be void, " unless such agreement or some note or memorandum thereof, *expressing the consideration*, be in writing, and subscribed by the party charged therewith."

Aside from the adjudications of other courts upon a similar provision of the statutes of other governments, it seems to us that there is but little room for doubt as to the true import and construction to be placed upon this language. But there is a conflict of opinion to be found in the decisions of the courts of some of the States and of England.

The language of our statute is that every *agreement* shall be void in certain cases enumerated, unless in writing, &c. The component parts of a valid agreement are defined thus : 1. Persons or parties able to contract. 2. A thing or subject concerning which the contract is to be made. 3. *A lawful consideration*, or *quid pro quo.* 4. Apt and proper words to express the agreement clearly and explicitly. 5. The assent of the contracting parties. (*vide Comyn on Contracts*, 2 ; *Chitty on Con.* 2 ; *Coke Lit.* 35 *b.* ; *Bouvier's Law Dic. Tit. Agreement.*

This being the definition of the necessary parts of an *agreement*, when the statute requires that it shall be in writing to be valid in certain cases, it but adds another quality to it ; but the writing cannot fully express an agreement without setting forth the *consideration*, which is one of its essential parts and without which it would be a mere *nudum pactum.* The leading case of *Wain vs. Walters*, 5 *East* 10, which gave a construction to the provision of the English

statute of frauds on this subject, proceeds upon this doctrine. The case of *Saunders vs. Wakefield*, 4 *Barn and Ald.* 595, re-affirmed the doctrine that the consideration must be set out in the writing, and the cases of *Jenkins vs. Reynolds*, 3 *Brod and Bing* 14 ; *Morley and others vs. Boothby and Clark*, 3 *Bing* 107, and numerous other adjudications in the English courts, show that the principle of *Wain vs. Walters* is the settled law there.

It is to be observed, however, that the English statute (29 *Car. chap.* 3, *sec.* 4) differs in words from our statute, because the former does not expressly require the *consideration* to be set out in the memorandum or note, while the latter expressly provides that the note or memorandum shall contain a statement or expression of the consideration.

Now, when we recur to the policy and object of the statute before us ; to its plain language, and to the fact that to permit parol proof of the consideration would be a palpable violation of the rule of evidence established by the statute itself, we are irresistibly led to the conclusion that the enforcement of the statute requires that not only the contract, promise, or agreement, but also the ingredient which renders it efficacious, namely : the consideration must be embraced in the writing, note, or memorandum, else it is void. The language of *Mr. Justice Grose* in the case above cited, is very forcible. He said, "If it were only necessary to show what one of them" (the parties to the agreement) " was to do, it would be sufficient to state the promise, made by the defendant who was to be charged with it. But if we were to adopt this construction, it would be the means of letting in those very frauds and perjuries which it

was the very object of the statute to prevent, for without the parol evidence, the defendant cannot be charged upon the written contract, for want of a consideration in law to support it. The effect of the parol evidence then is to make him liable ; and thus he would be charged with the debt of another by parol testimony, when the statute was passed with the very intent of avoiding such a charge by requiring that the *agreement* by which must be understood *the whole agreement*, should be in writing."

The Supreme Court of New York in the case of *Sears vs. Brink and Brink*, 3 *John.* 210, held "that the *consideration*, as well as the promise, must be in writing. The statute provides that the party shall not be charged, unless the *agreement* upon which the action shall be brought be in writing. This means the whole agreement, of which the consideration forms an essential and material part," and *Mr. Justice Nelson*, in *Rogers vs. Kneeland*, 10 *Wend.* 219, 250, says that the construction adopted in *Sears vs. Brink and Brink*, "has been followed in all subsequent cases,' and it requires not only that the promise should be in writing, but that there be a consideration also in writing to take the case out of the fourth section of the statute." Again, in *Smith vs. Ives*, 15 *Wend.* 182, Chief Justice Savage emphatically declares that "ev er since the case of *Sears vs. Brink* it has been *uniformly* held, in this court, that to take a case out of the statute of frauds, not only the *promise*, but the consideration for the promise must be in writing." The same learned Judge, in *Parker vs. Wilson*, 15 *Wend.* 343, in noticing the difference between the old statute of frauds of New York, which was a transcript of the English statute, in respect to the question of

guaranty of the debt of another person, and the provision of the subsequent revised statute of that State, (in all respects like our own State) holds that "the only difference is between the words *express* and *imply*, but that is a very material one in the present case. "I consider" (says he) "the statute cannot be misunderstood; the consideration must be expressly contained in the agreement. The consideration is an important part of every agreement, and necessary to its validity; and the Legislature intended that it should plainly appear upon the face of the instrument."

Without an examination of the several adjudications of the New York courts on this subject, which will not be found to be uniform or consistent, we may safely assume that the weight of authority in that State is against the validity of a guaranty, unless the consideration is expressed in the writing.

It is useless to examine the cases to which we have been referred, arising on blank endorsements of promissory notes, as they bear no analogy to the question now before us, which is confined to the point of the sufficiency of the written undertaking of the plaintiffs in error. It may be insisted that if the payee named in a promissory note made by A. should decline to take it, without the further security of another party's guaranty of the note before its delivery, and a guaranty is accordingly written upon it, that then the consideration of the original promise becomes a consideration for the undertaking of the guarantor. We know that several cases may be cited in support of this view of the question, but we believe that such a view is a departure from the manifest intention of the statute. There is no legal im-

pediment in the way of becoming liable for the debt of another person, but there is a legal requirement that the consideration for such liability, whatever it may be, whether moving or becoming beneficial to the guarantor, or moving from or becoming injurious to the guarantee, shall be expressed in writing.

The first class of cases designated by *Chief Justice Kent* in *Leonard vs. Vredenburgh*, 8 *John.* 29, comprises " cases in which the guaranty or promise is collateral to the principal contract, *but is made at the same time* and becomes an essential ground of the credit given to the principal or direct debtor." This class the learned Judge places within the statute of frauds. Now, by reference to the bill of exceptions, we find, that in the court below the plaintiff offered to prove that which would have brought his case exactly within the first class of cases, pointed out by *Chief Justice Kent*, in the case just cited. We have heretofore (in *Emerick vs. Sanders*, 1 *Wis.*, 77, 100,) expressed our concurrence in the view of Judge Kent that the class of cases referred to falls within the operation of the statute; and it is sufficiently apparent in the present case, that " the principal or direct debtor" was Samuel R. Hamill, to whom the credit was given, and for whom the plaintiffs in error became collaterally liable.

Undoubtedly an action might have been maintained by the defendant in error against Samuel R. Hamill upon his note, and this being so, the contract, promise, or undertaking of the plaintiffs in error was a collateral one, requiring a consideration to be expressed in writing.

Whenever a liability is against the original debtor or promissor remains, the undertaking of another

to meet the requirements of that contract or indebtedness must not only be for some adequate consideratian, but must be in writing expressing that consideration. *Fish vs. Hutchinson*, 2 *Wils.* 94 ; *Anderson vs. Hayman*; 1 *H. Black*, 120 ; *Watson vs. Wharam*, 2 *D. & E.* 80 ; *and other cases cited in Emerick vs. Sanders*, 1 *Wis. R.* 77.

In the case of *Brown vs. Curtiss*, 2 *Coms*, 225, the promissory note, payable to Brown, was transferred by him with the following endorsement: "I guaranty the payment of the within," and Mr. Justice Bronson in his opinion says, "If the case is within the statute, it is imposssble to get over the objection that no consideration is expressed in the guaranty." He then proceeds to discredit the authority of *Manrow vs. Durham*, 3 *Hill*, 584, and takes the case then before him out of the operation of the statute, upon the ground that the payee, Brown, by his guaranty in substance engaged to pay his "own debt in a particular way." Bearing in mind that G. F. Brown still remained liable on the note as the maker thereof, and that the payee, Chester Brown, was sought to be charged, not as endorser, but upon an independent contract, it is very difficult to appreciate the reasoning by which the case can be placed beyond the operation of the statue. It might be urged that Chester Brown gave his guaranty of G. F. Brown's note for his own debt, and this indebtedness would constitute a sufficient consideration for the guaranty, but admitting this to be the case, the statute nevertheless applies. He may pay his own indebtedness by guaranty of the debt of another, but the very fact that, that other person still remains liable, is of itself an incontrovertible test that the second contract or promise, while it is based

upon a good consideration, is to secure the debt or liability of another, and therefore within the words of the statute. The case of *Hall vs. Farmer*, 2 *Coms.* 553., is in all respects like the present case, and there it was held that the consideration should have appeared in the writing.

The question presented in this case is, we believe, a new one in our courts, although one well understood by the profession, and in deciding it we are free from the restraints of former decisions of our own courts, and at liberty to pronounce what seems to us to be the only legitimate construction which can be given to the provision of the statute before us. The conflicting views taken of the subject at different times by the courts of other States have produced a disagreeable uncertainty in those States, as to what the law on the subjct really is, and to avoid doubts of a similar kind in this State, we think it is only necessary to construe the words of the statute according to their plain and ordinary meaning.

We hold that where there is a liability by one party to another, and a third party becomes surety for the party bound, the agreement, promise, or contract of such third party must not only be in writing, but the writing must express the consideration for the promise or contract. When this is done, the guarantor is bound as well as the original promissor, and the intention of the statute is satisfied.

We believe the court below erred in rendering judgment against the plaintiffs in error, and therefore its judgment must be reversed with costs, and the cause must be remanded for further proceedings in accordance with this opinion.