SALMON F. HEATH *vs.* ALBERT B. VAN COTT and
Wife, et al., Appellants,

and

ALBERT B. VAN COTT, Appellant, *vs.* SALMON F.
HEATH.

TWO APPEALS FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard October 25.]                    [Decided Nov. 22, 1859.

*Mortgage—Indorser—Contracts—Evidence—Married
Women—Frauds—Foreclosure.*

Where A. was indebted to H., and M. the wife of A. made a promissory note
for the amount, payable to H., and secured the payment by a mortgage, upon
her separate property, and although A. indorsed the note before delivery,
yet it was held that A. could not be charged as a joint maker of the note
with M., nor could judgment be rendered against him, except he could
be charged as an indorser.

A contract of one kind in writing cannot be changed into another and different
one by parol testimony showing the intention of the parties at the time of
making the contract.

Courts will enforce contracts precisely as the parties have made them, instead
of making new contracts to meet the emergencies of a particular case, or to
avoid some supposed inconvenience or hardship arising from the natural im-
port of the written engagement. The writing furnishes the best possible
evidence of the intention of the parties, and determines their liabilities.

There is a clear distinction between the contract of an indorser and maker of
a promissory note ; the one is conditional and the other an absolute promise
to pay. So too, the legal difference between the contract of the indorser and
guarantor is equally clear.

Where a mortgage describes the note secured by it, as that of the maker and
mortgagor, it rebuts all presumption that the parties at the time considered
the note as the joint note of the maker and indorser, and ought to be conclu-
sive as to the intention of the parties.

The case of *Taylor vs. Pratt,* 3 Wis., 674, considered and approved.

The case of *Wooster vs. Northrop,* 5 Wis., 245, considered and approved.

The common law incapacity of a married woman to contract debts, has not
been removed by the statute relating to the rights of married women.

Heath vs. Van Cott.

A married woman may however charge her separate property with the payment of an indebtedness, and a court of equity will enforce such a contract by a proceeding *in rem*, against the property charged. The execution of a mortgage creates such a charge, and a judgment of foreclosure will be entered against it, and of sale to pay the debt.

The supreme court will not go into the examination of testimony, when the result of such examination cannot change the result of the decision of the case.

Where the making of a note and mortgage does not originate directly from a fraudulent arrangement, but they are made on a settlement of a partnership business, the court will not inquire whether there has been fraudulent transactions in the conduct of the partnership business, and thereby avoid the note and mortgage.

If in an action to foreclose a mortgage the defense was that the consideration of the note and mortgage was a fraudulent arrangement, and such defense being made to appear, courts will not lend themselves to aid in enforcing such fraudulent contract.

Heath commenced this action in Racine circuit court in the ordinary form, to foreclose a mortgage against Mary C. Van Cott, wife of Albert B. Van Cott, and Slawson. The mortgage was executed by Mrs. Van Cott and Slawson on premises owned by Mrs. Van Cott in her own right, the title to which vested in Slawson in trust to her use. The mortgage bore date February, 1850, and secured two notes made by Mrs. Van Cott, and indorsed by her husband.

Mrs. Van Cott pleaded coverture; and the bill was then amended disclosing the coverture and making her husband a party defendant. The amended bill was answered separately by Van Cott and his wife, setting up as a defense substantially the same matters as were afterwards embraced in the cross bill of Van Cott. The only issue personal to Mrs. Van Cott, was her power, as a married woman, to execute the notes and mortgage, and to mortgage her separate estate to secure her husband's debts.

The cross bill of Albert B. Van Cott charges, that he and Heath entered, on the 24th of April, 1847, into an agreement whereby he sold to Heath, goods, wares, merchandize, jewelry, tools, implements, &c., amounting to $1301 78, and agreed to work for Heath in carrying on the jewelry business, in repairing watches, &c., for one half of the net profits to be derived from the business. The profits to extend to new purchases

by Heath ; and at the end of the time Van Cott to repurchase all the articles not disposed of at the prices named in the schedule, if Heath should then wish to sell them. That the agreement was carried into effect by them and the business continued from the date of the agreement to the first of February, 1850. That their business amounted to about $17,000 ; but he could not state the exact sum, because Heath had all the books and vouchers in his possession and control. That at the end of the business the stock amounted to $2500, which Heath then sold to him in consideration that they were to be accounted for on the final settlement between them, and in consideration that Van Cott would assist in paying the debts Heath had incurred about the business. All of which were to be allowed to Van Cott on that settlement.

Mary C. Van Cott made two promissory notes, one for $350, payable March 1st, 1850 ; one for $1500, payable March 1st, 1851. And she and Slawson, her trustee, made this mortgage conditioned for the payment of the sums mentioned in the notes, according to the terms of the notes, on the private property of Mary C. That these notes and mortgage were made for the purpose of enabling Heath to raise money to discharge his liabilities in New York, amounting to some $2000, and for no other purpose. That one of the notes had been paid to Heath, and the other, except about $250, had been paid in taking up the liabilities of Heath in New York, and the $250 had been paid to Heath personally.

The cross bill charged that the $1301 78, the consideration for the first agreement had never been paid to Van Cott, though it was expressly agreed that it should be so paid at the close of the agreement. That Heath owed Van Cott for rent for the building in which the business had been transacted. That Van Cott had drawn out some money, but not his share according to the terms of the agreement; That he had called on Heath for an account and settlement, and he had refused to render one; and then denies the right of Heath to the decree prayed for in the bill to foreclose the mortgage, and asks for a discovery as to the matters set forth in the cross bill.

Heath answered the cross bill, admitting the making of the agreement of April, 1847; that the business up to February, 1850, amount to $15,000, and the profits to $5227 80. But denied that he had taken the books and vouchers, &c.; from their place until the 9th of February, 1850; that he had not refused access to them, nor to render an account of the business.

Heath vs. Van Cott.

That on the 9th of February he made a final settlement up to that time, and then dissolved the partnership, Van Cott having examined all the books and vouchers; that the stock then amounted to $4525, which. they reckoned at $4000 for the purpose of a settlement, and Van Cott took it at that sum; that the notes amounted to $1100, and the liabilities were $2900, leaving $2200 as profits, all of which they had agreed upon; that Van Cott had drawn out his share, and also the consideration for the first stock; so that on the final settlement Van Cott was to pay Heath $1850 as the amount due him on the settlement, and for which these notes were given by Mrs. Van Cott, and secured by the mortgage; that the $350 note had been paid also $750 on the other note, leaving $1500 due to Heath; that the business had been carried on in Heath's name because Van Cott was insolvent.

The case was transferred to Milwaukee circuit for trial, when a vast amount of testimony was taken; and the special commissioner reported that by the books it appeared that there was due to Heath at the time of the settlement, on the accounts, $968 57; but the testimony in relation to the books and their correctness was very conflicting. The note amounted to $2866 50, as reported by the clerk; and the decision of the court was, that the cross bill be dismissed and a decree of foreclosure entered to sell the mortgaged premises according to law, &c. That the defendant, Albert B. Van Cott, who is personably liable, pay the deficiency to Heath, and that he have execution, &c. To the decisions and judgments the Van Cotts excepted, and appealed to the supreme court.

*E. G. Ryan,* for Mrs. Van Cott, made the following points:

1. Mr. Van Cott was simply an indorser, and not a joint maker of the note, and as such he was discharged for want of protest. The New York doctrine in the language of Judge Bronson, that "a written contract of one kind may be turned into a contract of a different kind," has never obtained here, but it has been rejected in *Taylor vs. Pratt,* 3 Wis., 674, and is overruled in *Brewster vs. Silence,* 4 Seld., 207.

2. Mrs. Van Cott's note is void. *Erwin vs. Downs,* 15 N. Y. Rep., 575; *Wooster vs. Northrup,* 5 Wis., 245.

3. The note is the principal, the mortgage the incident. If the note is defeated the mortgage falls with it. If the note is void the mortgage cannot be valid. A mortgage to secure a void contract is void. *Yale vs. Dederer,* 18 N. Y. Rep., 265.

4. A married woman might charge her separate estate for her equitable debt, before our statute; but she could not before charge it for the legal or equitable debt of a third person. The cases which hold the contrary are exceptional to the rule and erroneous. Since the statute she cannot charge it with her husband's debt; if she can the whole policy of the statute is defeated. The law aims to put the property of the wife beyond the husband's control, whether by his acts or hers.

*Emmons & Van Dyke,* for the other appellants, urged that the transactions as disclosed by the answer to the cross bill, showing that there was a partnership existing, in which Van Cott's name was not known, because he was insolvent and dare not be known, was contrary to law and void; and no contract founded upon it could be sustained. 1 Story's Eq. Jur., §§ 296, 298; *Nelies vs. Clark,* 20 Wend., 24, and cases cited.

They also discussed the facts disclosed by the testimony, and claimed that no settlement had taken place, as appears by the books; and claimed that it appeared that the books were fraudulently kept.

*J. W. Cary,* for the respondent, made the following points:

1. The note in this case, although executed by Mary C. Van Cott, and indorsed by Albert B. Van Cott, is in fact the note of Albert, and is a valid note against him. The transaction shows it to be his debt, and that he intended to charge himself as principal; so it is not necessary to charge him as indorser. Story on Promissory Notes, § 34; *Johnson vs. Gilbert,* 4 Hill, 178; *Brown vs. Curtis,* 2 Coms., 225; *Brewster vs. Silence,* 4 Seld., 207.

2. A note, bond or other contract, of a *feme covert,* although void at law or equity, so as to bind her person or property generally during her lifetime, will nevertheless be enforced by courts of equity against her separate estate in all cases where she charges the same upon such estate either expressly or by implication. If charged upon her separate estate, it is an appointment *pro tanto,* and will be enforced upon it. This mortgage is therefore valid and will be enforced against the property charged.

3. The note and mortgage were given for a good and valid consideration, and are not tainted or affected by fraud. As appears from the testimony in the case.

Under this head the evidence was examined at great length.

*By the Court*, COLE, J.   It will be convenient to consider the questions arising upon these appeals, in the order in which they are discussed by the circuit court in the opinion filed in the cause.   And the first question which presents itself is, whether the appellant, Albert B. Van Cott, can be considered under the facts of this case, a joint maker of the note which was given with the mortgage sought to be foreclosed.   If so a personal judgment might be given  against him for any deficiency arising upon the sale of the mortgaged premises ; provided we should be satisfied that a collection of the mortgage debt should be enforced against the parties.   But if he is not to be held as  a joint maker of the note with Mrs. Van Cott, we do not understand that under the evidence in the case he is to be charged in any other manner, or that it is contended that a personal judgment for such deficiency could be given against him.

The circuit judge held that the evidence and pleadings clearly established the fact, that the note mentioned in the cause was given by Mary C. Van Cott to Heath for the latter's interest in the stock of goods, which he had sold and transferred to her husband, Albert B. Van Cott ; and that as the sale of the goods to Van Cott, the indorsement in blank of his name on the back of the note, the execution of the note and mortgage, were simultaneous acts, all done with the knowledge and approbation of Van Cott, and for his benefit ; therefore as between the parties, Van Cott might be charged as a joint maker and not as an indorser of the note.   We cannot concur in this view of the case.   Unquestionably cases can readily be found in the books which assert the doctrine that when a party is privy to the original consideration and indorses a note not negotiable, or one negotiable, but not negotiated, that then such party may be charged directly as a maker or guarantor of the note.   *Dean vs. Hall*, 17 Wend., 214 ; *Beckwith et al. vs. Angell*, 6 Conn. R., 315 ; and the cases

cited in the opinion of the judges in the above decisions.

Some of these cases in effect hold that a contract of one kind can be turned into a contract of another kind by parol testimony, as to the intention of the parties. But we do not think that these authorities are sound in principle and contain the true doctrine upon this subject, and therefore we are unwilling to adopt them as the law of this state. It is admitted by all that it is the duty of courts simply to enforce contracts, unexceptionable on other grounds, precisely as the parties have made them, instead of making new contracts for them to meet the emergencies of a particular case ; or to avoid some supposed inconvenience or hardship arising from the natural import of the written engagement. And the written instrument furnishes the best possible evidence of the intention and determines the liabilities of the parties. *Taylor vs. Pratt*, 3 Wis., 674 ; *Brewster vs. Silence*, 4 Seld., 207 ; *Brown vs. Curtiss*, 2 Coms. R., 225 ; *Spies vs. Gilman*, 1 id., 322.

Every lawyer very well knows the clear distinction between the contract of an indorser and maker of a promissory note, and that the engagement of the one is a conditional, and the other an absolute promise to pay the note. And the legal difference between the contract of indorsement and guaranty is equally clear and well understood. Now when a writing upon its face shows that a party entered into a contract of one kind to admit parol proof for the purpose of turning it into a contract of a different kind, is, as was well remarked by Judge Brunson in *Brown vs. Curtiss*, a dangerous proceeding, and at least, in violation of the salutary rule, that all prior negotiations between the parties are to be deemed merged in the final written agreement.

The note in this case purports to be the individual note of Mary C. Van Cott. By its term, she alone is the party who undertakes and promises to pay the amount of money therein specified to be paid. Albert B. Van Cott indorsed his name

on the back of the note in blank. There is certainly nothing upon the face of the papers which will authorize the conclusion that his contract is anything other than what the law imports ; his relations to the note appear to be that of a mere indorser. He has written the usual indorsement in blank, and the law fixes his liability under this indorsement. Upon what principle can extrinsic evidence be admitted to show that this contract is not what it purports to be, one of indorsement, but one of something else ? Can this be true ? Can a written contract thus be changed and converted into something entirely different by parol testimony ?

Now it would seem, if Mr. Van Cott intended to become liable upon this note as a maker, that he would have joined with his wife in the execution of it. But this he did not do. And he is only made liable as a maker by the admission of parol testimony to change the natural, legal import of the writing. But moreover, there is evidence in this case sufficient to show that the parties did not intend or suppose that Van Cott executed this note as a joint maker. The mortgage which was given by Mrs. Van Cott to secure the payment of this note, describes it as the note of Mary C. Van Cott. This rebuts all presumption that the parties considered it at the time as the joint note of Mary C. and Albert B. Van Cott. The note is spoken of as the note of Mary C. Van Cott, so described in the mortgage given at the time, and this ought to be conclusive as to the intention of the parties. We are therefore compelled to hold that, although Van Cott received the consideration for which the note was given, still that he cannot be charged upon this note as a joint maker. Whether this view of the case will relieve him from all liability upon the note, or his liability to pay for any deficiency, which may arise after the application in payment of the stock of goods taken by him, of the proceeds of the mortgaged property, it is not necessary to determine.

Heath vs. Van Cott.

It being determined that the note is the personal contract of Mrs. Van Cott alone, the next question to be considered is, how far a court will execute this contract entered into by a *feme covert.* It was insisted upon the argument by the counsel for Mrs. Van Cott, that this note was absolutely void, being made by a married woman, who is incapable of contracting by a promissory note or other personal obligation. It is well settled that at common law a *feme covert* was not competent to contract debts in this form, and that all such personal engagements to pay money are void, or at least no personal security will be given upon them.

And this court decided in *Wooster vs. Northrup et al.,* 5 Wis., 245, that the common law liability of a married woman to contract debts generally, had not been removed by the provisions of chapter 44, Sess. Laws, 1850. The same thing has been decided in the courts of New York, and of some of the other states under their statutes for the more effectual protection of the rights of married women, which enactments are not essentially different from our own upon that subject. 34 Maine, 266; *Erwin vs. Downs,* 15 N. Y. R., 575; *Yale vs. Dederer,* 18 id., 265.

In the present case however, the note was given by Mrs. Van Cott before the law of 1850 took effect. And while no action at law could be maintained against Mrs. Van Cott upon this note, nor would a court of equity give a personal judgment upon it against her; still it is clearly settled by the highest authorities that she may in terms and in a proper manner charge her separate estate with the payment of this note and a court of equity will enforce the contract by proceeding *in rem* against the property, upon which she has charged the debt. Mr. Justice Story in discussing the question as to how far the separate estate of a married woman is liable for any contracts, debts or other charges created by her during coverture, says: " At law she is during her cover-

ture generally incapable of entering into any valid contract to bind either her person or her estate." In equity also, it is now clearly established that she cannot by contract bind her person or her property generally. The only remedy allowed will be against her separate property. The reason of this distinction between her separate property and her other property is, that, as to the former, she is treated as a *feme sole,* having the general power of disposing of it; but, as to the latter, all the legal disabilities of a *feme covert* attach upon her." 2 Story Eq. Jur., § 1397.

Again, in a following section he remarks that her separate estate will, in equity, be held liable for all the debts, charges, encumbrances, and other engagements which she does expressly, or by implication, charge thereon, for having the absolute power of disposing of the whole ; she may, *a fortiori,* dispose of a part thereof. § 1399. A great number of cases are cited in the notes to the above sections, which fully sustain the doctrine laid down in the text. See particularly the cases of *Yale vs. Dederer and Wife, Supra ; Gardner vs. Gardner,* 22 Wend., 526 ; *Curtis vs. Engel,* 2 Sand. Ch. R; 287; *Murray vs. Barber,* 3 My. Keene, 209 ; same case, reported in 9 Eng. Ch. R., 1 ; *Owens vs. Dickenson,* 1 Craig & Phil. 48 ; same case, reported also in 18 Eng. Ch. R., 46 :

If these authorities contain the correct rule upon this subject, there can be no doubt but a court of equity will enforce the payment of this note out of Mrs. Van Cott's separate estate although no action would lie upon it at law. It is not necessary to enter upon any discussion as to what circumstances, in the absence of any positive expression of an intention to charge her separate estate, shall be deemed sufficient to create such a charge, since by the execution of the mortgage, Mrs. Van Cott has indicated in the clearest and most satisfactory manner her intention to charge the mortgaged premises with the payment of the note. Such being the case

we can see no objection to subjecting the property mortgaged to a judgment of foreclosure and sale to pay the debt.

But the foreclosure of this mortgage is strenuously resisted upon other grounds. It is in substance claimed in the cross bill filed by Van Cott, that he and Heath had been doing business together as copartners, under the name of Heath; that some time in February, 1850, they arranged their matters for the purpose of separating and closing their partnership connection; that at this time the mortgage and accompanying notes were given to Heath; not for any debt then due him, but as an advance, and to enable him to raise money upon them to pay certain debts, and for no other purpose whatever; that a final settlement was thereafter to be had, in which Heath was to account for the amount of the notes and mortgage; that no such settlement has ever been had, and that therefore it would be inequitable and unjust to permit Heath to foreclose this mortgage as though it absolutely belonged to him. This history of the transaction is fully and flatly contradicted by Heath in his answer to the cross bill, in which he in effect states that a final settlement was had of the partnership affairs, in February, 1850, and that he sold and transferred at that time, the stock of goods to Van Cott, and that by the basis of the settlement and sale considerable was found due him from Van Cott, and that the mortgage and notes mentioned in the pleadings, were given to secure the payment of these debts.

A vast mass of testimony has been taken in support of these different statements or relations of the transactions; on the one hand to show chiefly by the admissions of Heath to witnesses, and of the manner in which the books were kept after the alleged settlement, that no such settlement was in fact had in February, and that the notes and mortgage were taken by him for the special purpose of raising money upon them; and on the other hand, to show by like admissions of Van Cott,

Heath vs. Van Cott.

that a final settlement of the partnership affairs had taken place; that he bought the stock of goods of Heath, and had given a mortgage, &c. &c., in payment thereof.

We do not feel like entering upon an extended examination of this testimony, which would result in no profit to any one, but rather to state our conclusions upon it. And we fully agree in opinion with the circuit court that the evidence in the case shows, that there was a settlement between these parties at the time the notes and mortgage were given, and that these notes and mortgage were then executed to secure a part of the indebtedness found due upon such settlement from Van Cott to Heath. It appears to us that this is the most rational and satisfactory theory of the case. There may be some circumstances which militate against this view of the transaction, but they are not controlling or of sufficient weight to overcome the reasons which might be offered in support of it. It is conceded that the evidence in regard to the admissions of the parties upon the point of settlement, is of about equal weight on both sides. Standing by itself it would hardly authorize a conclusion either way.

One of the counsel for the appellant laid much stress upon the fact that the partnership books did not show that any settlement of the partnership affairs was ever had; and further, that entries were made in the books by Heath after the day of the alleged settlement. There are circumstances undoubtedly tending to show that the prior business relations of the parties continued. But still the explanation of this probably, is, that the books, upon the settlement, became the private property of Heath and were under his control. It does not appear that the books were used after the 9th of February for entering charges for merchandize sold, as they were before that day; while the conduct of the parties was entirely inconsistent with the idea that the partnership relation existed between them after that time.

Still another objection has been taken to the note and mortgage. It is contended that in his answer to the cross bill, Heath discloses such a state of facts in reference to the business relations of the parties as shows that the contract sued upon is the offspring of fraudulent and illegal dealing. Heath stated in his answer that the partnership business was carried on in his name for the reason that Van Cott was insolvent. And, further, that after the dissolution and settlement of the partnership affairs, he says, that Van Cott continued the business in his (Heath's) name until June following, because he was still insolvent and could not do business in his own name until his old debts were arranged and compromised. We do not think that these facts show that this cause of action springs out of any violation of public law. Concede, as we must, that Van Cott's carrying on business in Heath's name, was not a fair, honest, transaction ; that it was done for the purpose of deceiving his creditors as to his real condition, still it does not appear that this note and mortgage originated in, or had any connection with this fraudulent arrangement. We have already said that we were satisfied that the note and mortgage were given on final settlement of the partnership business, to secure in part the debts found due from Van Cott to Heath. The giving of the note and mortgage, we think, was entirely distinct and independent of the arrangements to permit the business to be continued in Heath's name. If the consideration of the note and mortgage was this fraudulent arrangement, the objection taken might be sound, for the courts would not lend themselves to aid in enforcing an illegal or fraudulent contract. As it is, we cannot see that the mortgage is tainted with the fraud.

It was also insisted that if any settlement was made on the basis stated by Heath in his answer to the cross bill, it was founded in gross mistake on account of the improper manner in which the partnership books were kept. There is great

conflict in the testimony upon this point, and as to whether the books were accurately and properly kept by Heath or not; but we do not think this evidence shows satisfactorily, that this ground of objection to the settlement in fact exists.

From the views we have taken of the cause, it follows that so much of the judgment of the circuit court, as gives a personal judgment against Albert B. Van Cott for any deficiency, which may exist after the sale of the mortgaged premises, must be reversed, and the judgment in other respects must be affirmed.