## HOUGHTON VS. ELY and others.

26 181
108 553

STATUTE OF FRAUDS : *Effect of writing name in blank on non-negotiable note, before delivery to payee.*

One (not being the maker or payee) who indorses his name in blank upon a non-negotiable promissory note, at the time it is made and delivered to the payee, for the purpose of giving the note additional credit, is liable as a *joint maker*, and is not protected by the statute of frauds.

[DIXON, C. J., is of opinion that when such an instrument, so indorsed, is produced in evidence, the presumption of law (in the absence of evidence to the contrary) is, that such indorsement was made at the time the rest of the instrument was made, as a part of the same transaction, and to give original validity and credit to the paper. COLE, J., expresses no opinion upon that point, the case not requiring any decision of it.

DIXON, C. J., criticizes the decision in *Taylor v. Pratt*, 3 Wis. 674. COLE, J., adheres to that decision, but declines to extend it to the facts in this case.]

PAINE, J., dissents, holding that such an indorsement does not indicate any intention to become liable as joint maker, and so far as it shows an intention to become liable for the debt of the maker, it falls within the principle of *Taylor v. Pratt*, and is void by the statute.*

APPEAL from the Circuit Court for *Kenosha* County.

The action was brought upon an instrument in the words following: "$600. CENTRAL CITY, *November 4th,* 1861. Nine months after date, for value received, I promise to pay *Orrin B. Houghton,* or bearer, six hundred dollars in good retorted dust, at $16 per oz., at the office of Lyon, Rillman & Co., with ten per cent. per annum interest from date. THOMAS CARTER." On the back of this instrument were written the following words: "Kenosha Quartz Company, by *C. L. Ely,* President.". The complaint alleges, in substance, that *Carter* desired to purchase, for $600,

---

* Section 2, ch. 107, R. S. 1858, provides as follows : " In the following cases, every agreement shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party charged therewith : * * * 2. Every special promise to answer for the debt, default or miscarriage of another person."

REP.

plaintiff's interest in the Kenosha Quartz Company (which was a copartnership consisting of the defendants, engaged in mining in Colorado Territory); that said company desired and requested plaintiff to sell said interest to *Carter* upon credit; that plaintiff refused to do so unless the company should become bound to pay the price, and thereupon the company agreed to become so bound; that in pursuance of the agreement defendants made and delivered the above described instrument, the company executing it by *Ely*, its president and duly authorized agent; that upon the delivery of such instrument to him, plaintiff conveyed to *Carter* his said interest; and that the terms "retorted dust," used in said instrument, denote gold dust purified by being retorted. The complaint further avers that the undertaking on the part of said company, was, and was intended by them to be, of the same extent and upon the same contract as that of said *Carter*, and that it was upon their liability to perform said agreement as makers thereof that plaintiff parted with his property to *Carter*. The complaint then alleges default in the performance of the agreement, etc. There were also averments designed apparently to charge the defendants, except *Carter*, as indorsers.

*Carter* did not answer. All the other defendants answered by a general denial.

The evidence need not be stated. The court instructed the jury, in substance : 1. That they should find a verdict against *Carter* for the sum named in the contract, with interest. 2. That the other defendants were not liable as indorsers, because the instrument was not in any legal sense a promissory note. 3. That they were not guarantors, because to render them liable as such it was necessary that the contract of guaranty, including the consideration thereof, should be expressed upon the instrument, and there was none expressed in this case. 4. That they were not liable in this action unless they were original promissors.

Houghton vs. Ely and others.

5. That if a party wrote his name on the back of such an instrument with intent to give the contract original validity or security, he was to be deemed an original promisor. 6. That if the plaintiff required the name of the company to the contract before he would take it, it was immaterial on what part of the paper the name was written, for wherever written it would be deemed in law the signature of a maker. 7. That if the signing by *Ely* was that of an original promisor, and such signing of the company's name was within the scope of his authority as the president or agent of the company, then all the defendants who were then members of the company were bound, and plaintiff was entitled to a verdict against them. 8. That if *Ely* exceeded his authority in so signing the contract, but executed it in that manner under the direction or assent of any of the members of the company, then the verdict should be against him and all the members so directing or assenting to the act, whether such assent was given at, before or after the time of such signing. 9. That the burden was upon the plaintiff of showing such authority or ratification, but this might be done by circumstantial evidence; that the authority might be inferred from the common course of business of the firm, or the previous course of dealing between the parties; and a ratification might be implied or inferred from the acts or omissions of other members of the firm, after they knew or had the means of knowing that such signature had been made for the accommodation of others.

Verdict for the plaintiff against all the defendants; new trial denied; and from a judgment on the verdict all the defendants except *Carter* appealed.

*O. S. & F. H. Head*, for appellants, to the point that under the statute of frauds the contract of the appellants must be in writing, and that such writing must express the consideration, cited *Osborne v. Farmers' L. & T. Co.*, 16 Wis. 35; *Dyer v. Gibson*, id. 557; *Emerick v. Sanders*, 1 id. 77; *Nelson v. Boynton*, 3 Met. 396; *Wain*

*v. Warlters*, 5 East, 10; and especially *Taylor v. Pratt*, 3 Wis. 674, and cases there cited.    2. If *Ely* exceeded the scope of his authority, then, to make out a *prima facie* case against the other partners, plaintiff should show that each was consulted, and consented to the transaction.    *Laverty v. Burr*, 1 Wend. 529; *Dob v. Halsey*, 16 Johns. 38; *Foot v. Sabin*, 19 id. 157; *Livingston v. Hastie*, 2 Caines, 246.    Under the circumstances of this case they were not liable unless they *expressly agreed* to the act of *Ely*.    *Mercein v. Mack*, 10 Wend. 461.

*J. J. Pettit* (with *F. S. Lovell*, of counsel), for respondents, argued that the defendants were original promisors or makers of the contract, citing *Hunt v. Adams*, 5 Mass. 358; *Joselyn v. Ames*, 3 id. 274; *Lawson v. Thornton*, 3 Met. 275; *Leonard v. Vredenburg*, 8 Johns. 28; *Bailey v. Freeman*, 11 id. 221; *Seymour v. Van Slyck*, 8 Wend. 421; *Seabury v. Hungerford*, 2 Hill, 84; *Griswold v. Slocum*, 10 Barb. 402; *Durham v. Manrow*, 2 Coms. 533; *Hall v. Wood*, 4 Chand. 38; *Snyder v. Wright*, 13 Wis. 691; *Ford v. Mitchell*, 15 id. 304; *Shook v. Vanmater*, 22 id. 532.    2. The note having been given and indorsed for the purpose and under the circumstances shown, all parties cognizant of the facts must be presumed to have assented to and ratified the acts of the president.    *Sage v. Sherman*, 2 Coms. 417, 426; *Sweetser v. French*, 2 Cush. 315; *Waterman v. Dutton*, 6 Wis. 265, 275.

DIXON, C. J.    Counsel for the defendants *Ely and others*, composing the firm or copartnership known as the "*Kenosha Quartz Company*," whose name, by the defendant *Ely*, its president, was written on the back of the note before its delivery to the plaintiff, contest their liability on the ground that the contract is within the statute of frauds, and void according to the doctrine of *Taylor v. Pratt*, 3 Wis. 674.    This position of counsel has led me to examine into the grounds

of that decision. I have done so very carefully, necessarily devoting much time to the subject, and the result has been ·to satisfy my own mind, at least, upon some points which before were doubtful to me, made so by the decision in question. I think it entirely correct to say that the opinion in the case is justly open to the criticism of the court of appeals of New York upon that of Chief Justice Kent, in the celebrated case of *Leonard v. Vredenburg*, 8 Johns. 28. The court of appeals say (in *Brewster v. Silence*, 8 N. Y. 211), that the then chief justice hoped, by his learned and elaborate opinion in that case, to put at rest forever most of the questions arising under that branch of the statute of frauds which relates to special promises to answer for the debt, default or miscarriage of another. And the court further observes, that a review of the cases in that state for the last forty years would show how fruitless was the attempt. Nothing can· be more true of the opinion in *Taylor v. Pratt* than these remarks of the court of appeals. That opinion attempted to settle and finally dispose of nearly every question arising under the same branch of the statute, and the futility of the effort will clearly appear from the numerous decisions of this court made since that time. In this respect the court was far less fortunate than the learned and world-renowned chief justice of New York, who, if he did speak *obiter*, succeeded, at all events, in stating principles which, with the exception of the majority of the court in *Brewster v. Silence*, and the court in *Taylor v. Pratt*, have received the unqualified assent and approbation of all courts and writers ever since that time. And this I say after the fullest examination of the authorities as well in New York as in other states of the Union, and also of the decisions in the courts of the United States and those of Great Britain. I cannot, therefore, assent to the correctness of the criticism of the court of appeals in this particular, but fully agree with the Chief Judge

COMSTOCK, in *Church v. Brown*, 21 N. Y. 333, when he says that the correctness of the first or main proposition enunciated by Chief Justice KENT, in *Leonard v. Vredenburg*, was never questioned in that state for forty years.

But to return to the opinion in *Taylor v. Pratt*, to which I was proceeding to show that the strictures of the court of appeals are fully applicable. The head-note prepared by one of the judges, and which is fully sustained by the opinion, announces as the point decided: "Where there is a liability by one party to another, and a third party guaranties or becomes bound, the agreement, promise or contract of such third party must not only be in writing, but the writing must express the consideration for the promise or contract." This seems to cover every possible case of guaranty or suretyship, and is an unqualified assertion that as to all the agreement must be in writing, which must express the consideration. And the opinion, on pages 695–6 of the report, asserts the broad doctrine as follows: "There is no legal impediment in the way of becoming liable for the debt of another person, but there is a *legal requirement* that *the consideration* for such liability, *whatever it may be, whether moving or becoming beneficial to the guarantor, or moving from and becoming injurious to the guarantee, shall be expressed in writing.*" See also the remarks upon pages 697 and 698. The very contrary of this proposition has, as to a large class of cases, been again and again held by this court, upon principles of the most unquestionable soundness, and never controverted anywhere except in the passage just quoted. *Osborn v. Farmers' L. & T. Co.*, 16 Wis. 39; *Dyer v. Gibson*, id. 557; *Shook v. Vanmater*, 22 Wis. 532; *Wyman v. Goodrich, ante*, p. 21. It will be seen by reference to these and other kindred cases, that the supposed authority of *Taylor v. Pratt*, has been very greatly qualified and overruled. Indeed it will be seen that there is nothing left of the deci-

sion except the point ruled with respect to the first proposition laid down by Chief Justice KENT in *Leonard v. Vredenburg*. That was the only point involved in the case, and the only one which the court could adjudicate, and as to that the decision was directly opposed to the opinion of Chief Justice KENT, and the scarcely less eminent jurists who, with him, then constituted the supreme court of New York. As to which court was right and which wrong upon that proposition, I am not sure that it becomes me now to express an opinion, since it seems to be a point not directly involved in this case, and since also, as will presently be seen, contracts of the kind here in suit were expressly excepted from the operation of the decision in *Taylor v. Pratt*. But, to answer the arguments of counsel, and the inferences drawn by them from that decision, it seems proper enough that I should consider it. It was considered in very much the same way in *Church v. Brown*, above cited. And it is at all events proper that I should give the present state or condition of the law respecting it, as, upon a survey of the whole field, I have found it to be with reference to the decisions of our own and other courts. Amid the multitude of adjudications upon the point, *Taylor v. Pratt* and *Brewster v. Silence* stand alone in opposition to the first proposition enumerated in *Leonard v. Vredenburg*. Every other decision of any weight or respectability in England or this country directly sustains that proposition. The authority of *Brewster v. Silence* has been greatly shaken in New York. The opinion of the chief judge in *Church v. Brown*, is a most powerful argument against it; and the fact appearing in that case, that but four of the eight judges then occupying the bench voted to sustain it, argues very strongly against its probable continuance as the law of that state. It seems but reasonable to infer that it will ultimately be overruled, and the old doctrine of Chief Justice KENT and his associates once more become the law of the state

The reasons in support of that doctrine are perhaps no where better stated than by Judge COMSTOCK in the opinion above referred to, and by the courts in *Union Bank v. Coster's Executors*, 3 N. Y. 209, and *Simmons v. Steele*, 36 N. H. 81.    And I may also very properly refer to the causes or motives which led to the enactment of this branch of the statute, and which are so well stated by Chief Justice SHAW in *Nelson v. Boynton*, 3 Met. 399, and by Justice WHELPLEY in *Hetfield v. Dow*, 3 Dutcher, 449.    These seem to weigh very strongly in favor of the construction given by the courts to the class of engagements named in the first proposition stated by Chief Justice KENT.    They seem to show, in holding the consideration to be sufficiently expressed by reference to that named in the principal instrument, both engagements being entered into at the same time, and together constituting but one transaction or agreement, that neither the letter nor the spirit of the statute has been in any manner violated or infringed. They seem to show that contracts of the kind, evidenced by the signatures of the parties to be charged, and executed and delivered with solemnity and deliberation, are not and cannot be within the mischief intended to be remedied by the statute ; that the fraud and imposition which the statute was designed to prevent, cannot be practiced in such cases; and that the courts are justified in applying to those contracts the same general rules of construction which govern as to others, and which show that the consideration is expressed for all the practical purposes intended by the statute.    In other words, it would seem that the statute was not intended to introduce any new rules as to the meaning or construction of contracts, but only that they should be evidenced in the manner prescribed by it; and that what would have been considered a sufficient expression of the consideration to uphold the agreement without the statute, or if it had never been enacted, and in view of the situation and circum-

stances of the parties and nature of the transaction,
as it appears from the entire instrument, will be con-
sidered a sufficient expression of the consideration with
the statute.   The statute provides that the considera-
tion shall be expressed in writing, but defines no par-
ticular form or mode of such expression.   The latter
seems to have been left open for judicial determination
upon the same principles that would have governed
without the statute.   Such is the construction which
the statute has almost universally received.

And again, I think I may properly refer to the class
of cases, everywhere to be found, in which it is held
that any expression of consideration in the note or
memorandum, however vague or indefinite, as for
example, the words *for value received,* is sufficient to
answer the requirement of the statute.   *Day v. Elmore,*
4 Wis. 190; *Cheney v. Williams,* 7 id. 413; and *Sears v.
Loy,* 19 id. 96, are· cases of the kind in this court.
The statute in terms requires the writing to express
not *a* consideration but *the* consideration.   This de-
parture from the letter of the statute was considered
in *Day v. Elmore,* where the court seemed to attach
some importance to the objection.   It was overruled,
however, on the authority of previous adjudications in
other states, the court saying what might better have
been said in *Taylor v. Pratt,* that "the mischief of
attempting to establish a new rule would probably be
much greater than that of a quiet acquiescence in the
one already established, inasmuch as the latter may
answer a liberal interpretation of the statute."   The
expression *for value received,* in a guaranty, conveys no
information whatever as to the real nature of the
transaction, or of the consideration for the promise.
It may be, and often is, deceptive and false.   The
guarantor most frequently receives nothing of value,
the true consideration being the credit obtained on
the faith of such guaranty by the principal debtor.
To uphold a guaranty upon a consideration which is

false, one which appears so on the face of the writing, or is shown to be so by proof of the facts and circumstances under which it was executed, seems more clearly to violate the letter of the statute than to uphold it upon the true consideration, which, though not expressed in the guaranty itself when considered as a separate instrument, fully appears when the guaranty is read in connection with the principal contract, of which it in fact, as well as law, constitutes an original and most essential part. *Sears v. Loy,* last above cited, is a peculiar case belonging to this class, and very aptly illustrates the just and liberal course of judicial interpretation in such cases. It was an action upon a guaranty of the payment of a promissory note, in which the consideration recited was obviously untrue. And besides, the guarantor offered to prove, and did prove, that the consideration named in it was never in fact received by him. The note was for $735.28, and the consideration for the guaranty was expressed in these words: "In consideration of one dollar to me in hand paid, I hereby guaranty," etc. The circuit court refused a request of the plaintiffs to instruct the jury that the guaranty, upon which they brought suit, was in the nature of a contract, and included a receipt for the consideration, and that, in the consideration of the case, the jury should disregard all testimony of the defendant as to the non-payment of the consideration expressed in the guaranty of the defendant in evidence; but it did instruct the jury, that if the consideration mentioned in the guaranty had not been paid—and the defendant's evidence was competent proof on that point—then the defendant was not liable to the action. The opinion of this court was delivered by Mr. Justice COLE, who, in commenting upon these instructions, used the following language: "Without stopping to determine the question whether the court should not have given the above instructions asked by the plaintiffs, we think the charge is open to objection upon this point.

There certainly was testimony in the case from which the jury might possibly have found that the plaintiffs sold the goods to Day (the maker of the note) upon the faith and credit of this guaranty. *If this were so, then it is evident that the consideration for the guaranty is amply sufficient and valuable to support the promise, even if the one dollar had never been paid. At all events it is very clear,* that the court should *have qualified the charge* by stating to the jury that if the one dollar mentioned in the instrument was not paid, *and there was no other consideration for the promise, such as selling the goods to Day upon the faith and credit of this guaranty,* then the defendant was not liable." There was another instruction given, which was as follows : "If the evidence showed that the guaranty in evidence was the inducement to sell to Day the goods for which the note in evidence was given, then the plaintiffs were entitled to recover in the action." This instruction was held to be repugnant to the charge with respect to the non-payment of the one dollar, as it clearly was, and the opinion proceeds : " We think the instructions, as given, were calculated to mislead and confuse the jury, because the court omitted to instruct them that the one dollar must have been paid, *or there must have been some other consideration sufficient to support the agreement,* otherwise the defendant was not liable." A question was made in the case as to whether the defendant was not estopped from denying the receipt of the one dollar. Upon this the opinion reads thus : " We do not intend to commit ourselves upon the question, somewhat discussed on the argument, whether the defendant had a right to show by parol proof that the one dollar was never in fact paid, or whether, under the circumstances, he would be estopped from going into that matter. If he could attack the payment of the one dollar, he ought to be required to show further, and in addition to this, that *there was no other consideration for the undertaking,* before he can be relieved from his liability. The burden of

showing this devolves upon him in order to establish a complete defense, even if he is not estopped from attacking the consideration." Now, although it may not heretofore have been so understood, this case, in reality, overrules *Taylor v. Pratt* upon the very point there in decision. The two cases cannot stand together. Either *Taylor v. Pratt* is not law, or *Sears v. Loy* is not. I participated and fully concurred in the decision of the latter, and am unable to discover any reasons why I should change my opinion. The simple facts in *Sears v. Loy* were, that the guaranty, which was made before the goods were delivered, constituted the credit given to the principal or direct debtor, Day. The goods were sold on the faith of the guaranty, which was the real and only consideration for the guaranty, that named in it being merely nominal and false. This was apparent from the writings themselves, the note and guaranty, when read in the light of surrounding facts and circumstances, as very many contracts must be in order to their true understanding and application. It was so apparent as to render mistake or misunderstanding as to the true consideration quite impossible, and this court, not shutting its eyes to the facts thus appearing, as in justice and conscience it could not, held, notwithstanding the recital of the nominal consideration of one dollar, that the defendant must not only disprove that, but the other consideration which also appeared, or he could not be discharged from the obligation of his promise. This was returning, as I understand it, squarely to the rule laid down in *Leonard v. Vredenburg*, and which is supported by all other decisions except as has been already stated. It was holding that the actual consideration, which was different from that mentioned in the guaranty, nevertheless appeared, or was sufficiently expressed, on the face of the writings to sustain the promise, even after the consideration mentioned was disproved or shown never to have existed. It was considering the making and

delivery of the note and of the guaranty as one original and entire transaction; " for," as Chief Justice KENT says, " a guaranty of a contract implies, *ex vi termini*, that it was a concurrent act, and part of the original agreement."    The note and guaranty being therefore regarded in law as but one instrument, for the purpose of giving effect to and enforcing the latter, the debt or consideration for the note was the consideration for the guaranty, and the expression of such consideration in the note was an expression of the same in the guaranty, sufficient to answer the· requirement of the statute.    Upon this and no other principle could we have decided as we did.    We certainly did not intend to, nor did we, hold that no expression in writing, either general or special, of the true or actual consideration was required.    It was upon this principle that I assented, and that, in fact, we all agreed to the decision.    I have referred to this class of cases to show, what would seem to be very clear, that the strict and literal interpretation of the statute which constitutes the sole merit of the rule laid down in *Taylor v. Pratt*, an interpretation which, ignoring the spirit of the statute and sticking to the letter, sacrifices the most important rights of parties and destroys their most solemn compacts and obligations upon points of the merest technicality, does not prevail in other cases under the same statute.

And the experience of the British people, as shown by their legislation, is certainly not well calculated to encourage a belief that these innovations upon former decisions or departures from long-settled rules of construction as to what constitutes a sufficient expression of consideration within the meaning of the statute, will be productive of anything but disorder and mischief. The case of *Wain v. Warlters*, 5 East, 10, decided by the King's Bench in 1804, introduced, as is well known, a new rule of construction upon this branch of the statute of frauds (29 Car. II. cap. 3, s. 4).   Prior to that decision,

and for more than a century and a quarter after the passage of the statute, it had been well understood in England that the consideration for the special promise need not be expressed in the writing.    Lord ELDON, whose authority in the law was certainly very great, speaking of that case, said :    "Until it was cited some time ago, I had always taken the law to be clear, that, if a man agreed in writing to pay the debt of another, it was not necessary that the consideration should appear on the face of the writing,"    *Gardom, ex parte*, 15 Vesey, 288.    But that decision changed the rule, so that it became necessary that the consideration should appear by the express terms, or by *necessary inference* from the terms of the writing.    This was the most important and the only great change ever effected in the construction of this clause of the statute.    The decision was quite unsatisfactory at the time, and failed to recieve the approbation of many eminent lawyers and judges, including Lord ELDON, but ultimately became the settled law of England.    Now the sequel of this great change has been, that after fifty years' experience under the rule thus established by judicial interpretation, the English nation found it so inconvenient, oppressive and unjust, that it was obliged to return by act of parliament to the old rule which had so long prevailed before that decision was made.    By the 3d section of the Mercantile Law Amendment Act, 1856, 19 & 20 Vict. c. 97, it was enacted that "no special promise to be made by any person after the passing of this act, to answer for the debt, default or miscarriage of another person, being in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized, shall be deemed invalid to support an action, suit or other proceeding to charge the person by whom such promise shall have been made, by reason only that the *consideration for such promise does not appear in writing, or by necessary inference from a written document*."    Upon this subject see the

very lucid opinion of READ, J., in *Shively v. Black*, 45 Pa. St. R. 347, to which I am indebted for my information as to this act of parliament, as we have unfortunately no copy of the British statutes in the library of this state. Now the experience of the English people is the experience of the American people in matters of this kind. The habits, customs and wants of the people in the transaction of business and the carrying on of trade and commerce, are the same in both countries; and what has been found to be a stubborn, unjust and burdensome rule in the one country, will be found the same in the other. In view of these facts, the question arises, ought the courts to abandon settled points and overturn long established constructions for the sake of bringing within the operation of a rule acknowledged to be mischievous, a large class of cases which otherwise are clearly not affected by it? The answer to this question would seem to be very plain. Let the courts stand by the law as already expounded. Let them not enhance the mischief, nor strike down the rights or remedies of parties, by the introduction of new rules of construction, but rather trust to the wisdom and experience of the many great masters of the law, who in times past have so often considered and determined the very same questions. And when to these considerations the yet more important one is added, that for every change of decision in the way of extending the operation of the statute to contracts not before within it, new sacrifices must be made, vested rights destroyed, and honest creditors defrauded and disappointed, the answer becomes still more clear and imperative. Stability and certainty in the law are always of the first importance. They are more especially so in cases arising under the statute of frauds than any other. There is no statute the provisions of which enter more frequently into the transactions of trade and commerce. It is a matter of daily and hourly interest that they should be remem-

bered and attended to. Contracts made with reference to present decisions and settled expositions are always very numerous. One decision afterwards made, changing the rule and cutting off one contract, sweeps away thousands. Creditors are left to mourn their losses, and to complain of the fickleness of the courts, and, as they think, not without some reason, of their injustice too, while only the debtor class, persons who have reaped all the benefits of the contract, or enabled others to do so on the faith of their promise, but are now willing and eager to escape its burdens and repudiate such promise, are favored by or rejoice at the doubts and uncertainty which are thus introduced. The effect of such decisions is to corrupt the morals of the people, and destroy confidence in and respect for the judiciary. Happily for the country the number of such decisions is not large, the bad example of *Wain v. Warlters* having been seldom followed; and when it has, the error has in general been very soon corrected. I find in a note, 2 Kent's Com. 513, 11th edition, the following passage: "It was said in the last century, at Westminster Hall, that the statute of frauds of 29 Car. II. had not been explained at a less expense than one hundred thousand pounds sterling. I should suppose, from the numerous questions and decisions which have since arisen upon it, that we might put down the sum at a million and upwards." The losses consequent upon the decision of *Wain v. Warlters* no doubt exceeded all others put together. It is certainly not wonderful that Lord CAMPBELL, speaking of the statute, should have said: "I shall rejoice when it is gone. In my opinion it does much more harm than good. It promotes fraud rather than prevents it, and introduces distinctions which, I must confess, are not productive of justice." *Marvin v. Wallis*, 6 E. & B. 736 [88 E. C. L. 735]. And still the question recurs, shall we increase the uncertainty and aggravate the mischief by further changes of judicial interpretation? Shall we

attempt to put out the fire by adding fuel to it? If the object is to make the statute so grievous and unbearable as to secure its repeal, that may constitute some apology for this course of decision. But, notwithstanding what Lord CAMPBELL says, the statute, with all its evils, has no doubt produced much good, and if steadily and uniformly administered according to some well defined and established principles, may be made permanently beneficial. And that there are, and for nearly half a century past have been, such well defined and established principles upon which the rights of parties may be safely rested, will, I think, clearly appear if one will take the trouble to examine the cases which have been adjudged during that time. I know it has sometimes been said, and the supposition sometimes prevails, that there exists the utmost confusion and conflict among the authorities, and that nothing has ever been settled. Nothing, in my judgment, can be more untrue or unfounded. Observations of this kind will generally be found in those cases of recent date in which courts or judges, not satisfied with the previous course of decision, attempt to establish some new rule or interpretation of their own. One would infer, from examining some of these cases and from the tenor of remark found in them, that the statute of frauds is a sort of free common in the law, into which all who come may theorize and speculate at pleasure, and in which the object of all pursuit is to show by what new and ingenious turns and devices the heels of unlucky creditors may be tripped up, and faithless debtors let out from the discharge of their honest obligations. In such cases, fortunately few in number, and themselves constituting the only exceptions to generally well established rules, the struggle seems to be to show to what new and unheard of purposes of destruction the statute may by possibility be applied The disastrous consequences to creditors who have acted on the faith of previous decisions, and the respect

due to those decisions, are nothing if this object can be accomplished. For the good name of the law, as well as of the courts, it would seem time that these unfounded statements were contradicted. It is no doubt true, in the great multitude of cases which have arisen under the statute, that there have been some vacillation and conflict of decision, and occasionally a great revolution like that inaugurated in *Wain v. Warlters;* but notwithstanding these, I think it may be safely affirmed, that for the last forty years, at least, the decisions have been as uniform and harmonious, both in England and in this country, as upon any other great topic of the law. The great channels of authority have been most clearly marked and defined, so that mistake with respect to them seems not to have been possible; and if we omit some differences as to points of minor interest and consideration, which will always exist, the unanimity of opinion displayed by the courts has, under the circumstances, been very remarkable. If we take, for example, the three propositions laid down by Chief Justice KENT in *Leonard v. Vredenburg,* we shall find them to have been almost always and everywhere sustained. And the same remark is true with respect to numerous other propositions which were enunciated about or before that time, and as to the same and other branches of the statute. But I have already dwelt too long upon this interesting subject, and must hasten to questions more directly involved in the present litigation.

I have said, in the former part of this opinion, that contracts of the kind here in suit were expressly excepted from the operation of the decision in *Taylor v. Pratt.* This appears from page 695 of that report, where the court says: "It is useless to examine the cases to which we have been referred, arising on blank indorsements of promissory notes, as they bear *no analogy* to the question now before us, which is confined to the point of the sufficiency of the *written*

undertaking of the plaintiffs in error." This shows that the attention of the court was drawn to this class of cases, with respect to which there was no intention to trench upon former decisions. The name, in this case, was written upon the back of a note not negotiable. There is, therefore, no question as to the defendants not having incurred the liability of indorsers. There can be no such thing as an indorsement of such a note. They are liable, therefore, if at all, either as original promisors with the maker, or as guarantors of the payment. The complaint proceeds on the theory that they were original promisors, and the court instructed the jury that they were liable in that character, and not as indorsers or guarantors, if the jury should find that the name was written with intention to give the contract original validity or security. This instruction was, in my judgment, precisely correct; and this being so, there arises of course no question under the statute of frauds. It was but the ordinary case of suretyship constituting the basis of the credit originally given. I do not know but there may be some persons who can satisfy themselves that contracts so signed are within the statute of frauds, and void for want of a memorandum expressing the consideration. I have already said enough upon that subject to show that, in view of past decisions by which such contracts have been invariably upheld, I could not assent to such conclusion. I am opposed, in any and every case where the contract has heretofore been sustained by a respectable line of decisions, to bringing it for the first time within the ban of the statute. I should be especially opposed to it in this case, where the decisions heretofore have been very numerous, and the whole weight of authority and undivided opinion of the courts have been that they are valid. Some of my reasons for this opposition have already been pointed out. A sense of duty requires me to decide the law as I find it to

be, and not as I, perhaps, would have it. Uniformity of decision in matters of this nature in the courts of the various states, is greatly to be desired. The greatest evil or burden which the trade and commerce of this country are at the present day required to encounter, grows out of such conflicts. Contracts of the kind are often made in one state, when performance is to take place in another, or when suit to enforce them must be brought in the courts of another. By the decisions in the state where made they are valid, but by those in the other state they may not be. It has been held that the contract does not carry with it to another state the construction of the statute given by the courts of the state where it is made. Injustice and loss are, therefore, the inevitable result in such cases.

Again, it may be said that the position of the signature on the back of the note is inconsistent with the supposition that the defendants intended to make themselves liable as joint makers. It is very clear that they did not intend to make themselves liable as indorsers, for that they could not do. They must then have intended to assume the liability of makers or guarantors, or else no liability at all was intended. The latter supposition is so inconsistent with reason and justice, and contrary to what appears from the instrument itself, that it cannot be entertained for a moment. The defendants clearly intended to bind themselves for the payment of the note. The name upon the back was written for that purpose. They so intended it, and the plaintiff accepted it for the same purpose, and parted with his property on the faith of it. To give effect to such obligation, the construction must be that it was a joint promise or a guaranty. In the one case the defendants were sureties, strictly so called, and in the other, guarantors. The difference between the two, as regards the nature and extent of

the obligation, is very slight, if indeed there exists any at all. In *Lequeer v. Prosser*, 1 Hill, 256, it was held that the liability was the very same; but other courts have made some distinction. Both are bound absolutely for the payment of the debt, and what will discharge a surety will in general discharge a guarantor, and *vice versa*. And accordingly we find that the courts have sometimes held that persons thus obligated may be charged as joint promisors, or guarantors, at the option of the payee. In case the payee choose the latter, then it has been held that he may write out a guaranty over the signature, and upon that bring suit. For cases of this kind, reference may be had to *Hopkins v. Richardson*, 9 Gratt. 494, and cases there cited. See also *Ford v. Mitchell*, 15 Wis. 308. But to this class of cases there exists, to my mind, a considerable objection, growing out of the statute of frauds, which in many of them seems to have been overlooked. That objection is very clearly pointed out in the opinion of Mr. Justice BELL, in *Hodgkins v. Bond*, 1 N. H. 294. But by far the larger number of cases hold to the rule laid down by the circuit judge in this case, and to that I most fully assent. The rule of those cases is, that the instrument, by its very terms and mode of execution, imports a joint promise or making. The presumption of the law is that it was all one transaction, and that the signature upon the back was put there to give original validity and security to the contract. The court looks at the instrument, and, without proof of any other fact or circumstance whatever, pronounces such to be the effect of it—that the party so signing it is a joint promisor, and the burden of proving that he is not, or that such was not the nature of the transaction, lies upon him. He may discharge himself in the same manner and by the same means as any other promisor, but not otherwise; he may show a failure of consideration to charge him as maker, which he does

do when he shows that his name was not written originally upon the note, or at the time it was made and delivered. The consideration of the note is not then the consideration for his promise, and he is not liable as maker. Upon a new or different consideration arising after the execution and delivery of a nonnegotiable note, he can be charged only as guarantor, or possibly as a second maker, as many authorities hold. The maxim *ut res magis valeat quam pereat* may be a very old one, but I think it is nevertheless a good one. It is a maxim expressive of one great object regarded by courts in the construction of contracts, namely, the preservation of the contract itself. 3 Hill, 235. We must construe the words of the instrument, if possible, *ut res magis valeat quam pereat.* GROSE, J., 10 East, 427. It is upon this maxim or rule of construction that the courts have always held contracts thus executed valid and obligatory. There is no case to be found, I am quite sure not one, in which they have not been so held. Professor Parsons, in his most valuable work on Notes and Bills, in the chapter entitled "*Of Guaranty and other Collateral Agreements,*" vol. 2, pages 117 et seq., has collected the decisions, I should say, by estimation, to the number of one hundred or more, by the courts of nearly every state, and also of England, in all of which such contracts have been sustained. Indeed, the rules by which they are governed have been so long and well established as to become elementary in our law, and no other reference is required than to this or any other standard elementary work treating of the subject. Under these circumstances I cannot doubt as to my conclusion. I must sustain the contract as in terms sufficient to charge the defendants. "When," says the Chief Judge COMSTOCK, in the opinion above referred to, "the rules laid down by the courts become the laws which sustain titles and contracts, they are, in general, to be sacredly

adhered to; but when they can be used only as instruments of destruction, error. ceases to be sacred, and principle and truth ought to be re-asserted." I must adhere to the rules heretofore laid down, and cannot vote for any new ones which shall become mere new "instruments of destruction."

A late case in the court of appeals, which has come to hand since the above was written, fully sustains the conclusion at which I have arrived, and shows that the decision in *Brewster v. Silence* is not understood by that court as having changed the rules of law in cases of this nature. *Richards v. Warring*, 1 Keyes, 576.

Of the other questions in this case I shall only say, in general, that we all agreed in consultation that there was no error for which the judgment below should be reversed. The propositions of law were fairly and properly given to the jury, and their verdict is not unsustained by evidence. I think the judgment should be affirmed.

COLE, J. While I should adhere to the decision of *Taylor v. Pratt*, in a case presenting the same facts as that case did, yet I am unwilling, in view of many of our previous decisions and the authorities elsewhere, to extend the principle there laid down to new cases. In *Taylor v. Pratt* the defendants guarantied the payment of a negotiable promissory note, executing the guaranty at the time the note was given. Here the firm placed its partnership name in blank upon the back of a note not negotiable, when it was executed and delivered to the payee. The intention in thus placing the firm name upon the note undoubtedly was to give the contract additional credit and security. Now it may be that the principle of *Taylor v. Pratt*, if inflexibly adhered to and applied, would render this blank signature of no effect. So I think it would the contract of indorsement sustained in *Cady v. Shepard* and that class of cases. These contracts would all be within the

statute of frauds according to the reasoning of Mr Justice CRAWFORD. I am, therefore, unwilling to contribute to any uncertainty in the law by extending the decision of *Taylor v. Pratt* to new cases. Consequently I feel bound to hold, with the chief justice, that the contract in the present case is not within the statute, but that upon the authorities the defendants are liable as joint promisors with the maker of the note.

PAINE, J. It is in vain to attempt to reconcile the authorities upon questions arising under the statute of frauds, or to extract from them any rule that can justly be considered as settled beyond question. The unwillingness of the courts to give effect to the positive and plain requirements of this statute, has led to inextricable confusion and uncertainty. And I think this fact has naturally and justly created a tendency to return as rapidly as possible to the judicial duty of giving effect to statutes as they are made, and leaving the legislature to make such changes as experience may suggest to be desirable. In *Taylor v. Pratt*, 3 Wis., 674, this court decided that a written guaranty upon a promissory note, though referring to the note, and though made at the same time with the note, and constituting a ground of the credit given to the maker, was void within the statute of frauds, because it did not express the consideration for the guaranty. There is no doubt that that decision was contrary to an indefinite number of authorities. But there is also no doubt that it was in accordance with the statute of frauds. For, however reasonable it might be, in the absence of any statute controlling the question, for the courts to say that upon such a state of facts the presumption should be that the consideration moving between the primary parties to the note was also the consideration for the guaranty and sufficient to uphold it, yet it cannot be said that by the ordinary force and

import of language, it is expressed either by the guaranty alone or by that read in connection with the note itself, that the consideration of the note was also the consideration for the guaranty. No such result follows from the mere fact that the note is referred to in the guaranty. If the note so referred to contained any language importing that idea, then it would readily be conceded that, by referring to it, the guaranty would be fairly construed as re-asserting and adopting such language. But the difficulty is, the note contains no such language. It professes only to state the consideration for the promise of the maker. Therefore, even if it should be admitted that one instrument, by referring in any manner or for any purpose to another, necessarily so adopts it as to make it a part of itself, it still cannot be held to adopt it for any more than it purports to express. And the result is, that the note could be held to have been adopted only as expressing the consideration between the original parties. But it is not true that one instrument, by referring to another, necessarily makes the other a part of itself. On the contrary, the true rule is, that it adopts the other only so far and for such purposes as it professes to. If one instrument should contain the most lengthy recital of a consideration, and another referring to it should contain a promise upon the consideration therein mentioned, such language would make the consideration so recited as much a part of the instrument referring to it as though it were repeated. Such would be its evident design and obvious natural effect. But it can by no means be said that every reference by one instrument to another makes the latter a part of the former, without regard to the nature and object of the reference, or to the natural adaptation of the one to become a part of the other. Such a proposition would lead to frequent absurdities. The consideration for a guaranty, though made at the same time with the note, may have been entirely distinct from that moving

between the original parties. It may have moved between the maker and guarantor. And though it cannot be said that a note and guaranty drawn like those in *Taylor v. Pratt* exclude the idea that the consideration of the former may have been also that of the latter, yet it is equally true that they do not express that idea. It is a case of entire silence upon the subject. Proof that such was or was not the fact would be equally consistent with what appears on the face of the instrument. The guaranty refers to the note evidently for the sole purpose of identifying the instrument to which the guaranty applies. Beyond that it does not purport to adopt it, or make any use of it whatever for the purpose of helping out its own meaning. And to say that there is anything in either or both that amounts to any expression of the idea that the consideration of the one was the same as that mentioned in the other, is to strain the meaning of the language beyond what it will legitimately bear.

Whatever might have been said, therefore, as to the weight of authority upon this question at the time *Taylor v. Pratt* was decided, I think upon principle it was decided correctly, as was also *Brewster v. Silence,* 4 Selden, 210, in which the New York court of appeals decided in the same way at about the same time. And the criticisms of Chief Justice COMSTOCK upon the latter case, contained in his opinion in *Church v. Brown,* 21 N. Y. 328, is itself unsound in assuming, what cannot be shown, that such a note and guaranty, read together, express the idea that the latter was given upon the consideration mentioned in the former.

In this case the action is upon a contract for the payment of $600 in gold dust, at $16 an ounce, having been made at Central City, in the gold mining region. It was not negotiable, being payable in gold dust. It was indorsed " Kenosha Quartz Company, by C. L. Ely, President." All the defendants, except *Carter,*

are sought to be charged as members of that company, and by means of this indorsement. The parol proof, if admissible, shows clearly enough that the property for which the note was given was sold to *Carter* upon the credit of the responsibility of the company. The question is, whether, upon the indorsement, together with such parol proof, the members of the company are liable. There was no proof as to what law, if any, was in force where the contract was made; and the action being brought here, our courts must be governed by our own law. The question of negotiability or non-negotiability seems to me to be material only for the purpose of determining whether a signature on the back of an instrument constitutes the proper contract of indorsement within the law merchant. If it does, then it is a contract well defined in the law, and as it imports a transfer of the title from the party so indorsing for value, it comes within the third class of Chancellor KENT's celebrated classification in *Leonard v. Vredenberg*, and, for the reasons lately referred to by this court in *Wyman v. Goodrich, ante, p.* 21, is not within the statute of frauds at all. But where the signature does not amount to a proper indorsement within the law merchant, the question arises, what it does amount to. And here the confusion, uncertainty and inconsistency begin. This question arises upon a signature on the back of a non-negotiable instrument like the present, which is conceded not to be subject to the strict contract of indorsement. It also arises even on a signature on the back of a negotiable instrument, which is placed there as a ground of credit to the maker, and prior to the delivery to the payee, to whose order it is payable. I think, upon principle, both of these classes of signatures stand upon the same footing. Some courts, following the lead of that of Massachusetts, have held the party so indorsing liable absolutely as maker, just as though he had signed at the bottom of the instru-

ment.   The court of appeals of New York repudiated that doctrine, characterizing it as making contracts for the parties which they had not made for themselves, and, in the case of such a signature on the back of a negotiable note, held the party liable as indorser, notwithstanding it appeared that he had never been the owner or holder of the note, and had never transferred the title.   This court in *Cady v. Shepherd,* 12 Wis. 639, and in other cases, followed these New York cases, without, however, explaining in what manner the objection arising under the statute of frauds was avoided.   The decisions seem to rest upon the general proposition, that inasmuch as the courts had held such parties liable upon some ground, we, in selecting among the various grounds, preferred to charge them with the liability of indorsers, that being the liability which the form of their contract indicated an intention to assume.   I know that was the general idea upon which I concurred in those decisions, and that I failed at that time to perceive distinctly what I now think to be the true relation of the question to the statute of frauds.

Other courts have criticised this New York doctrine, and have showed, I think, satisfactorily that it is an innovation upon the mercantile law to hold such parties to have made a proper contract of indorsement, and have held them liable as guarantors.   It may be observed, also, that the whole weight of the Massachusetts decisions and others that have followed them, above referred to, charging such parties absolutely as makers, is repugnant to the theory that they could properly be considered as indorsers within the mercantile law.

I have thus alluded to our decisions as to this peculiar class of indorsements on negotiable paper, for the reason that, as already said, I can see no distinction upon principle between them and similar indorsements upon non-negotiable paper, either in respect to

the contract which the parties should be presumed to have intended, or the relations of such contracts to the statute of frauds. And while I should probably not be in favor of disturbing those decisions as applicable to negotiable paper, I am compelled to determine whether the same result can properly be reached in respect to a blank indorsement of non-negotiable paper, like that now under consideration.

It is conceded here on all hands that it is not a proper contract of indorsement, because the paper was non-negotiable. There are then but two alternatives left. The party indorsing, if liable at all, is liable either absolutely as maker, or collaterally as guarantor. In determining which, these various classes of decisions perform for each other substantially the service of the Kilkenny cats. They devour each other, or very nearly so, leaving just enough to point unmistakably to the conclusion that such a signature amounts to an ineffectual attempt by the party to bind himself, it having failed by non-compliance with the statute of frauds. The New York doctrine, as well as the numerous cases that hold the party to be a guarantor, overthrow the Massachusetts doctrine that he may be charged as maker. The latter is certainly liable to the criticism that it makes a contract for the party which he evinced a clear intention not to make for himself. For if any intention whatever is indicated by a signature on the back of an instrument, it is that the party was not to be liable as maker. And the recognition of this fact, as a mere question of presumed intention, will be found to pervade a great majority of the cases, and such is, beyond doubt, the general understanding of the business community. Courts have no right to change the contract from that which was obviously attempted and intended to be made, upon the ground, so often suggested, that the party intended to become "liable in some form." They have no more right to take

such liberty with a blank signature on the back of an instrument, than they would have where the party, as in *Taylor v. Pratt*, attempted to fill out a guaranty. It was obvious there, as in all that class of cases, that he intended to become liable. But no court would assume the right upon that ground to charge him as maker, because his attempt to bind himself by guaranty had failed. Where the instrument is negotiable, and the blank indorsement is made prior to the delivery to the payee by one not otherwise a party to the note, the Massachusetts cases, as well as all those that charge such a party as guarantor, overthrow the New York rule that he is an indorser according to the law merchant, and would seem to leave such an indorser upon the same footing with an indorser, like that in this case, of non-negotiable paper.

The fair conclusion in both cases is that which this court and the New York courts have held in the case of negotiable paper, that the party intended to assume the conditional liability of indorser. There is no legal objection to his contracting for that liability, in respect to either class of paper, though his contract might not be a strict contract of indorsement within the law merchant. The only difference would be, that he might be obliged to resort to some further formalities in the one case, in consequence of the statute of frauds. When his contract is a proper mercantile indorsement, as already seen, it is not within the statute. But where, in consequence of the character of the paper itself, or of his relation to it, he cannot make a regular mercantile indorsement, but still desires to bind himself collaterally for the payment of the debt of another, and not have his obligation absolute, but conditional like that of an indorser, there would be no objection to his making such a contract; but, being directly within the letter and spirit of the statute, he would have to make it in writing and express the consideration. And although this court,

in *Cady v. Shepherd* and other similar cases, arrived at a correct conclusion, that the party intended to contract for the conditional liability of an indorser, I am compelled to think that we erred in assuming, as we seemed to, that such an indorsement, being purely a collateral promise to answer for the debt of another, was equally without the statute of frauds as a proper indorsement within the law merchant, where the party owning the note transfers it by indorsement for a consideration moving to himself. I allude to it, not for the purpose of re-opening the question as to negotiable paper, but to show why I think the same error should not be extended to cases like the present.

But although I think the fair inference from a blank signature on the back of either negotiable or non-negotiable paper, not constituting a proper indorsement, is that the party intended to contract for a conditional liability, yet it is immaterial, so far as the question relates to the statute of frauds, whether such a contract is held to have been intended, or that of guaranty. Either is a collateral promise to answer for the debt of another, and distinctly within the statute.

The only remaining question, therefore, is, whether there is any ground for saying that the provisions of the statute are complied with. I confess I can see none whatever. If, as in *Taylor v. Pratt*, a guaranty and signature are both void, for merely failing to express the consideration, how the signature alone could be held to comply with the statute I am at a loss to imagine. That expresses neither the consideration nor the promise. I know there are many cases in the books that treat such a signature as an authority to write any contract over it that would be consistent with the real intention of the parties. But they have to get at what that intention was by parol evidence. And I have never yet seen a case that has made any satisfactory attempt to reconcile such a course with the

requirements of the statute.    If they may in this mode dispense with the written contract expressing the consideration, which the statute requires to be signed by the party, I cannot see why they might not as well carry it one step farther, and dispense with the signature also.    I think such a practice is properly characterized by POTTER, J., in *Richards v. Warring*, 39 Barb. 47.    In considering a case like the present, of a blank indorsement of a non-negotiable note, he is brought to the alternative of holding the party liable either as maker or guarantor.    He says : " If the legal presumptions are as we have said, then he must of necessity have signed the note to the payee in one of these relations.    This relation, I am equally clear, cannot be that of a guarantor, unless we revive the exploded doctrine that the party payee or owner is authorized to write a guaranty over the blank signature of the party attempted to be charged.    Such a doctrine is not now in favor with the courts; it is denied by counsel here in this case, to be the law.    It could not be often available to a party, unless it be carried to such an extent as to repeal the statute of frauds by judicial construction, or more properly by judicial legislation."    The learned judge, however, while rejecting the exploded doctrine that the party could be charged as guarantor, revives the equally exploded doctrine that he was liable as maker. . He adopts the Massachusetts rule, which had been rejected in New York, and which the courts of Massachusetts themselves, as indicated by some of their later opinions, evidently consider unsound upon principle.    In *Essex Company v. Edmands*, 12 Gray, 276, Chief Justice SHAW said, that if it were a new question it would be " fairly open to argument."    And then, in stating what had been settled in Massachusetts, he said that the law presumed that the party making such an indorsement, which in that case was upon a negotiable note, intended to become " *liable to pay it in some capacity and on some terms.*"

And they then resort to parol evidence to find out in what capacity and upon what terms the party contracted. Such is the uncertainty to which such a doctrine necessarily leads. And yet the court, in *Richards v. Warring*, falls back upon this uncertain ground, upon the same general reasoning, that the party intended to become liable in some form, and as they do not find that he succeeded in becoming liable in any other form, therefore they will hold him liable as maker. The fallacy and error of this reasoning consists in the assumption that the courts have the right to take any such liberty, and in refusing wholly to consider the possibility that the party may have failed to accomplish his intention, and not succeeded in binding himself in any form. This is a contingency that the courts are bound to face in interpreting such a contract. And when they have found that they cannot give effect to the manifest intention of the party to bind himself collaterally for the payment of the debt of another, by reason of non-compliance with the statute of frauds, they are not under any imperative obligation, as they seem to assume, to devise some other form of holding him liable; but there is just one other duty incumbent upon them, and which they have so frequently overlooked, and that is, to administer the statute, and say that, by reason of its provisions, the party failed to become bound at all. And although the opposite rule has been so long acted on in Massachusetts that its courts feel bound to adhere to it, yet they furnish to other courts, that are not so trammeled by their own precedents, sufficient warning to avoid entering upon the path in which they reluctantly remain. In the case of the *Union Bank v. Willis*, 8 Met. 504, which related to the signature of a third party on the back of a negotiable note prior to its delivery to the payee, that court said: "If the subject now brought before us were a new one, we should hesitate in giving countenance to such an irregularity as to hold that any person

whose name is written on the back of a note should be chargeable as promisor. We should say that a name written on the paper, which name was not that of the payee, nor following his name on his having indorsed it, was either of no validity to bind such individual, because the contract intended to be entered into, if any, was incomplete or within the statute of frauds, or that he should be treated by third parties simply as a second indorser, leaving the payee and himself to settle their respective liabilities according to their own agreement."

Accepting it, therefore, as an incontrovertible presumption, that a party signing his name upon the back of a note does not intend to become liable as maker, and believing that no court has any right, for the sake of avoiding the effect of the statute of frauds, to arbitrarily impose such a liability upon him; believing that *Taylor v. Pratt* was properly decided, and that the present case is clearly within its principle, I am compelled to hold, in the language of the Massachusetts court just quoted, that the *Quartz Company* was not bound, "because the contract intended to be entered into, if any, was incomplete or within the statute of frauds."

Where the case is within the statute at all, that a mere blank signature cannot be considered a compliance with its provisions, is very clearly shown by *Drake v. Markle*, 21 Ind. 434. The court say: "In view of this statute we cannot see how a collateral contract to answer for the debt of another can be shown by parol to have been entered into or intended by the mere writing his name by Drake on the back of the note of such other person. It is really making a contract between the parties, which, in the absence of such evidence, the law would not intend from the act performed. It may be said that the contract was made previous to and distinct from the act of indorsing the name of the promisor on the note. That is probable; but what was that contract? The plaintiff says he

will show by the oral testimony of these witnesses. Perhaps no general principle would be violated in doing so, in the absence of positive law. But we are met by the positive statute, which forbids the establishment of the fact by oral testimony. This may operate oppressively in individual cases, but the law is thought to be necessary to guard against frauds and perjuries."

So also in *Van Doren v. Tjader et al.*, 1 Nev. 380, a case in which the subject is very clearly discussed both by the counsel and the court, and the court says: " The contract of guaranty must however be in writing, signed by the party to be charged, and must express the consideration. A mere indorsement in blank is not sufficient, nor are any words which do not express the consideration upon which the agreement rests."

There is no way of avoiding the statute, except by taking the case out of it entirely, and charging the party absolutely as maker, which can only be accomplished by doing violence to his manifest intention.

I think the judgment should be reversed, and the cause remanded for a new trial.

*By the Court.*—Judgment affirmed.