George Craig Stewart, Appellant, v. Arthur T. Mc-Intosh and A. W. Hannah, Appellees.

## Gen. No. 39,380.

McSURELY, J., dissenting.

Heard in the first division of this court for the first district at the February term, 1937. Opinion filed June 28, 1937.

F. F. & J. V. NORCROSS, of Chicago, for appellant; JOHN V. NORCROSS, WILLIAM RUGER and JAMES A. VELDE, all of Chicago, of counsel.

FOREMAN, BLUFORD, KRINSLEY & SCHULTZ, of Chicago, for appellees; RAYMOND H. SCHULTZ, VICTOR J. VOORHEIS, VICTOR HEDBERG and DAVID C. KENYON, all of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action upon an implied promise to pay a promissory note executed May 1, 1928, for $30,000 with interest, upon trial by the court there was a finding for defendants with judgment, from which plaintiff appeals. The evidence as to the facts can hardly be said to be conflicting.

Defendants McIntosh and Hannah on February 27, 1926, entered into a trust agreement with the Chicago Title and Trust Company, which bore that company's number 16289. At that time Hannah was the owner of premises in the city of Chicago known as the northeast corner of State and Chestnut streets, which was subject to a mortgage of $30,000, made March 26, 1923, which by its terms would mature on the first day of May, 1928. Upon the organization of the trust this property was conveyed to the Chicago Title and Trust Company, as trustee, and became subject to all the terms and conditions of the trust of which McIntosh and Hannah were beneficiaries, holding an undivided one-half interest in the proceeds of the real estate which was subject to the terms of the trust. The trust agreement provided that the trustee should deal with the real estate only upon the written direction of Hannah and McIntosh.

May 1, 1928, the trustee at their request, for the purpose of refinancing the mortgage which had matured, made an instrument in writing of that date which is designated a "principal note." The writing provided that the maker would pay to the bearer $30,000 five years after date, with interest represented by coupons.

The writing distinctly stated that it was executed by the Trust company, "not personally but as trustee," and by its terms expressly provided in substance that neither the trustee nor any beneficiary of the trust should be personally liable by reason thereof, but that the principal amount named should be payable only out of the real estate conveyed by a trust deed of the same date which conveyed to the State Bank of Chicago, as trustee, by proper legal description, this property located at the northeast corner of State and Chestnut streets. The writing designated "principal note," the trust deed and the coupons expressly provided that there should be no personal liability of the maker, trustee, or any beneficiary, and that the obligations thereby created were secured only by the premises conveyed, every other liability being negatived in express terms, both in the "principal note" and in the trust deed. The note expressly provides, "In case of default in the payment of this note or of any instalment of interest the sole remedy of the holder hereof or of any of the interest coupons hereto attached shall be by foreclosure of the said trust deed."

May 2, 1928, Hannah applied in writing to the loan department of the State Bank of Chicago for a loan of $30,000, offering to the bank this note, the coupons and the trust deed. The application states the size of the lot, states that it is improved by a two-story "very old" building of no value, consisting of two apartment of five rooms and two stores; that the value of the ground is $75,000; that the land is encumbered for $30,000; that the trust deed offered would be a first valid lien upon the premises; that the title to the property was in the Chicago Title and Trust Company as trustee under trust agreement 16289; that the notes would be dated May 1, 1928, and signed by the Chicago Title and Trust Company; that the applicant agreed to pay for internal revenue stamps and a fee for record-

ing the trust deed and a commission of 2 per cent on the amount of the loan for the services of the bank in negotiating the same. This application was written on stationery of the State Bank of Chicago real estate loan department, bore the signature of A. W. Hannah, and bears on its face the initials of Jevne Haugan approving the same.

On the same day defendant Hannah wrote a letter to the State Bank of Chicago, "Attention of Mr. Haugan," stating that he was handing to the bank a trust deed on the property securing the $30,000 note with all coupons, the same having been indorsed by Mr. Arthur T. McIntosh and himself. The letter also states that he was exhibiting the title guaranty policy; that the title had been continuously in the Chicago Title and Trust Company, and that the applicant desired to have the matter of paying off the encumbrance which had accrued expedited, and requested that "upon presentation to you of the final interest coupons and the two notes for $15,000 each, mentioned in the policy, you pay out of the proceeds of the new loan and notify me as to the further amount required, which amount I will immediately remit to you. I will then see that the trust deed securing the old loan is released and that a mortgage policy is issued under your mortgage and delivered to you. In the event of my failure to procure such an acceptable mortgage policy for you within thirty days I agree to refund such amount as you shall advance as requested in this letter."

Having indorsed this "principal note" and the 10 interest coupons, defendants Hannah and McIntosh delivered the same to the bank with the trust deed on May 2, 1928. On the next day the State Bank issued its checks in payment of the mortgage then existing upon this land at the northeast corner of State and Chestnut streets in Chicago, under the trust agreement of which McIntosh and Hannah were beneficiaries,

After receiving the notes, coupons and trust deed the real estate loan department transferred same to the trust department where these securities were allocated as an investment to a trust fund designated by the bank as No. 3459 and known as the Bishop's Benevolent Fund. It had been established in the State Bank by the Right Rev. Charles P. Anderson, then the Bishop of the Protestant Episcopal Church in the Diocese of Chicago. The State Bank, as trustee of this fund, was authorized to invest and reinvest it. Upon receiving the "principal note," trust deed and coupons the trust department transferred out of this Benevolent fund the principal sum of $30,000 with interest from May 1, 1928, to the real estate loan department in payment for the note, trust deed and coupons with accrued interest. The State Bank was afterward consolidated with the Foreman National Bank of Chicago, and this consolidated bank passed into receivership and these securities into the hands of its receiver, Mr. Albers. October 10, 1933, plaintiff Bishop elected to terminate Trust No. 3459, and these securities with other assets of the trust were delivered by the receiver to him. Three interest notes for $825 each are due and unpaid. The "principal note" fell due May 1, 1933, and has not been paid. There is now due under the terms of the "principal note" the sum of $38,084.69.

Defendant Hannah was not served and has availed himself of bankruptcy in California. He did not testify. McIntosh was called as a witness by plaintiff under section 60 of the Civil Practice Act. (See Ill. State Bar Stats. 1935, ch. 110, ¶ 188; Jones Ill. Stats. Ann. 104.060.) McIntosh testified to the facts heretofore stated with reference to the creation of the trust, the incumbrance on the land, the execution of the "principal note" and trust deed. He further testified that he indorsed the "principal note" at the request of Hannah, who then took the note to the bank. The testimony

of McIntosh is to the effect that Hannah brought the note to his office, said the bank wanted the beneficiaries under the trust to indorse it; that he did so; that Hannah said he had arranged to refinance the property and witness "assumed" Hannah took the note to the bank and got the money. In reply to a question McIntosh said that he put his name on the back of the "principal note" to get credit for the trust, whereupon his attorney suggested "all the bank wanted on this was the acknowledgment of the beneficiaries here that they were satisfied for the Chicago Title and Trust Company to mortgage this piece of property which had a value of $75,000." The witness adopted the suggestion and thereafter adhered to it consistently.

Jevne Haugen, vice president of the State Bank of Chicago, testified. He was asked whether when he O. K.'d the loan he understood it would bear the indorsement of defendants. An objection by defendants was sustained. Mr. Haugen said he talked about the loan with Mr. Hannah; that when the securities were brought they bore the signatures of Hannah and McIntosh and he did not know whether these indorsements were on them when first presented to him. Mr. Hannah, he said, was the only person with whom he dealt in the matter.

Albin V. Gustafson, who at the time of this transaction was employed by the State Bank of Chicago in its real estate loan department, called by defendants, testified and identified the loan file in which the securities were placed. He also identified the signature of Harley A. Miller, who at the time of the transaction was an employee of the State Bank but at the time of the trial was in St. Louis.

The question for determination is whether on these undisputed facts defendant McIntosh is liable for the amount of this loan. The defendant concedes that the instrument designated "promissory note" is non-negotiable, but contends further that it is not a promis-

sory note at all. Plaintiff says that the question of whether the note is a promissory note is wholly immaterial. He cites a large number of cases from jurisdictions other than Illinois which he interprets to hold as a matter of law that, "wherever it appears that the irregular indorser of a non-negotiable note or instrument for the payment of money attaches his signature in order to obtain credit from the other party to the transaction, or does in fact receive or participate in the consideration, he is universally held (in all cases not controlled by statute or proof of an express promise) to be an original promissor for the repayment of the debt." Among the many cases cited are *Barrows v. Lane & Benham*, 5 Vt. 161; *Duchaine v. Phoenix*, 100 Vt. 112, 135 Atl. 715; *Wetherwax v. Paine*, 2 Mich. 555; *Dow Law Bank v. Godfrey*, 126 Mich. 521; *Richards v. Warring*, 1 Keyes 576; *Strong v. Strong*, 247 N. Y. S. 773; *Houghton v. Ely*, 26 Wis. 181; *Fayetteville Bldg. & Loan Ass'n v. Crouch*, 115 W. Va. 651, 177 S. E. 532; L. R. A. 1916 D, p. 223; and *Kingsland v. Koeppe*, 137 Ill. 344. Practically all the cases cited are discussed in an annotation to *Brown v. Cook*, L. R. A. 1916 D, and a similar annotation to the case of *Barnes v. Rowles*, 84 Mont. 393, 79 A. L. R. 717, 719. In the annotation last cited the annotator says:

"As shown by the cases cited in the several subdivisions of this annotation, the weight of authority supports the rule that the indorser of a non-negotiable bill or note, whether he be the payee or transferee indorsing the same for the purpose of transfer, or a stranger writing his name thereon before delivery, is liable on his indorsement. A study of the history and evolution of the subject, or a consideration of the necessities of commerce, convinces one that this doctrine is a sound one."

However, at page 728 the annotator states:

"Although the weight of authority and the better reasoning support the contrary rule (see subd. Ill. a, 1,

*supra*), it is held in some jurisdictions that the mere blank indorsement by payee or transferee of a non-negotiable note does not, of its own force and without evidence of the actual agreement of the parties, render him liable to the indorsee.''

As supporting the minority view are cited *Smith v. Myers,* 207 Ill. 126, 69 N. E. 858; *Fidelity & Deposit Co. of Maryland v. Young,* 159 Ill. App. 531, and *First Nat. Bank of Cass Lake v. Lamoreaux,* 255 Ill. App. 15. At p. 737 the annotator states in substance that an examination of the cases confirms the statement in 3 R. C. L. 1160, that ''the authorities are in hopeless conflict both as to the extent and nature of the liability of an indorser of non-negotiable paper.'' The trial court was of the opinion that *Smith v. Myers,* 207 Ill. 126, was controlling, and that under the law as settled by that decision plaintiff cannot recover. The court was also of the opinion that parol evidence was inadmissible to establish the liability of defendants. Nevertheless the court admitted parol evidence and plaintiff does not complain that any material evidence offered by him was excluded. As already stated, the plaintiff contends that whether this instrument designated a ''principal promissory note'' was or was not a promissory note is not material or important. We think these Illinois cases show that the distinction is vital.

In *Smith v. Myers,* 207 Ill. 126, it appeared W. C. Myers, on August 1, 1893, at Waterbury, Conn., made his note due August 1, 1894, to the order of N. D. Grannis. By the terms of the note the maker agreed to pay a certain sum of money ''and taxes.'' Indorsements on the back of the note showed payments on February 8, 1894, and December 3, 1894. Beneath these indorsements appeared the indorsement, ''Dwight L. Smith, Aug. 3, 1893.'' Underneath the Smith indorsement appeared the indorsement, ''Rev. Johnston Myers, Cin., O., July 31, 1893,'' and underneath this indorsement

was the indorsement of the payee, "N. D.. Grannis."
Smith brought suit against Rev. Johnston Myers and
filed a declaration consisting of two special counts and
the common counts. In the first count Smith declared
himself to be a second indorser and charged defendant
as first indorser. By the second count plaintiff, as in-
dorser or assignee, charged defendant as indorser.
Each count averred that defendant, Rev. Myers, in-
dorsed the note before the delivery thereof at Water-
bury, Connecticut, and that by the laws of Connecticut
the blank indorsement of a negotiable or non-negotiable
note by a person who is neither maker nor payee, be-
fore or after its indorsement, imported the contract
of an ordinary indorsement of negotiable paper as be-
tween the payee or subsequent holder of the paper.
The evidence taken upon the trial showed that plaintiff,
the payee, Grannis, and Myers, the maker, all lived
at Waterbury, Conn. at the time the note was executed
and delivered at that place; that when the note became
due it was protested for non-payment; that the pay-
ments credited thereon were made by the trustees of
the maker of the note, who in the meantime had become
insolvent; that plaintiff Smith paid the balance due on
the note at the time he received it. The Connecticut
statute was introduced in evidence and plaintiff offered
to prove by a conversation between plaintiff and de-
fendant prior to the indorsement that there was a con-
sideration for plaintiff's indorsement, in that defend-
ant also agreed to indorse. Evidence was also offered
to the effect that defendant admitted liability in letters.
This evidence was excluded. Plaintiff asked an in-
struction in his favor, which was refused, and an in-
struction requested by defendant in his favor was
given. The Supreme Court affirmed the judgment for
defendant. It held the character of the instrument to
be decisive of the case, and said, citing many authori-
ties, that the amount due could only be ascertained

by reference to extrinsic circumstances; that the amount to be paid by the maker was, therefore, left indeterminate and subject to possible contention; that instruments whose consideration was thus fluctuating and indefinite and which were laden with such embarrassments to their circulation could not perform the functions and did not possess the character of negotiable paper. After quoting the Connecticut statute in full the court said:

"The contention of appellant is that the instrument sued on is a promissory note, carrying with it all the legal effects and incidents of such writing, while the appellee contends that said instrument is only an ordinary contract for the payment of money, and not a promissory note, because of the addition of the words 'and taxes,' following the provision for interest and preceding the name of the maker."

The court pointed out that the action was controlled by the Connecticut statute where the instrument was made and delivered, but if the instrument was not a promissory note then it was clear that the defendant bore no such relation to it as would render him liable under the proof disclosed. The opinion concludes:

"We are unwilling to assent to the contention that such instruments can or ought to be construed as negotiable instruments *or promissory notes.*"

It is apparent from this analysis of this case that it is not controlling or decisive. The plaintiff there was suing under a Connecticut statute by which it was claimed the defendant indorser was liable to the same extent as if the instrument not negotiable had been in fact negotiable. That was the theory and the only theory upon which the plaintiff sought to hold the defendant. The question of what inference might arise from the indorsement of instruments which were neither negotiable in their nature or promissory notes was not involved in the case and was not considered.

A like analysis of *Fidelity & Deposit Company of Maryland v. Young,* 159 Ill. App. 531, and *First Nat. Bank of Cass Lake v. Lamoreaux,* 255 Ill. App. 15, discloses that these cases also are not controlling or decisive for the same reason, namely, that in each case the plaintiff sought to hold the defendant liable upon the theory that the indorsement of his name upon the instrument carried with it all the liability which would result from an indorsement made upon an instrument which was negotiable. In each of these cases the court held that plaintiff could not recover upon that theory. In the *Fidelity & Deposit Company* case the court said:

"The instrument in question, however, is not a promissory note, *either negotiable or non-negotiable. Smith v. Myers,* 207 Ill. 126. It is a mere contract to pay money, a mere chose in action."

In the Lamoreaux case the court, quoting with approval from *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.,* 190 Ill. 404, said:

"No contract or agreement is a promissory note, either negotiable or non-negotiable, which does not provide for payment absolutely and unconditionally. If payment depends upon a contingency which may never happen, it is not a promissory note."

The sum and substance of these Illinois cases, as it seems to us, is that a plaintiff may not recover upon a mere irregular indorsement made by one not a party to the instrument before its delivery, unless the instrument is, first, a negotiable instrument within the meaning of the law merchant (see Ill. State Bar Stats. 1935, ch. 98, secs. 21 and 23, ¶¶ 41, 43; Jones Ill. Stats. Ann. 89.041, 89.043); or, secondly, an instrument which although not negotiable within the terms of that statute is recognized by the law generally as a promissory note. In either of these two classes of instruments an irregular signer may become liable by mere indorse-

ment. It is apparent, we think, under the decisions of the courts of this State that the instrument here indorsed is neither a negotiable instrument nor a promissory note, and therefore defendants are not liable merely by reason of the indorsement, and plaintiff cannot recover solely upon the indorsement for the reason that under our law the instrument in question is a mere chose in action, the indorsement of which does not necessarily justify an implication of any contractual relationship. While this is true, we do not think that any one of these Illinois cases goes to the extent of deciding that an indorser of a chose in action may not become liable under any circumstances. Nor does any one of these cases hold that proof of such indorsement might not be supplemented by proof of extrinsic facts from which a contractual liability might be inferred. Plaintiff, we understand, brings his case upon this theory. We do not understand the Illinois cases hold to the contrary but think the courts of Illinois free to follow the majority rule in such cases. 26 Illinois Law Review, 911. We think the trial court erred in holding that extrinsic evidence was not admissible for the purpose of establishing liability. However, no material evidence was excluded and all the evidence taken is in the record before us.

After an examination of the evidence we hold the proof here is insufficient to justify an inference of contractual liability as guarantor of the ''principal note,'' as against these defendants. There was, of course, proof of the indorsement, but proof of a mere indorsement, as we have seen, is not sufficient. If it had been the intention of the parties that the indorsers should assume a guaranty of payment of the note, it would seem such an intention would have been made to appear from something said or done at the time the transaction was consummated. Especially is this true since any such liability as is now contended for is ex-

pressly negatived by the language of the note and trust deed. Such liability is directly contrary to the express language of the written documents—the trust indenture, the "principal note," the coupons and the trust deed. To give this indorsement the meaning for which plaintiff contends would be to destroy the very purpose for which the trust was created, as appears from the documents in evidence. The indorsement was probably merely for the purpose of showing that the beneficiaries consented to the transaction and apparently for that reason alone was requested by Haugen. Any contrary inference would rest upon mere speculation, which cannot create a legal liability. It follows, assuming (which we do not doubt) that the plaintiff is the owner and has a right to sue (the obligation being payable to bearer) that he cannot recover against the defendant McIntosh on the evidence.

The judgment of the trial court is affirmed.

*Affirmed.*

O'CONNOR, P. J., concurs.
McSURELY, J., dissents.